**In re Virgil Glen SIMMONS, Debtor.**

**No. 05–81355.**

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

Dec. 11, 2006.

Robert Whittington, Akron, OH, Counsel to Debtor.

Lenore Kleinman, Office of the U.S. Trustee, Region 9, Howard M. Metzenbaum U.S. Courthouse, Cleveland, OH, Counsel to U.S. Trustee, Region 9.

### MEMORANDUM OPINION RE: MOTION TO DISMISS CASE PURSUANT TO 11 USC § 707(b)

MARILYN SHEA–STONUM, Bankruptcy Judge.

This matter comes before the Court on the following pleadings: (1) a "Motion of the United States Trustee to Dismiss Pursuant to 11 U.S.C. Section 707(b)(1)" [docket # 27] (the "Initial Motion to Dismiss"); (2) debtor's response to the Initial Motion to Dismiss [docket # 36]; (3) a "Supplement to Motion of the United States Trustee to Dismiss Pursuant to 11 U.S.C. Section 707(b)(1)" [docket # 37] (the "Supplemental Motion to Dismiss") and (4) debtor's reply to the Supplemental Motion to Dismiss [docket # 38]. [The Initial Motion to Dismiss and the Supplemental Motion to Dismiss will be collectively referred to herein as the "Motion to Dismiss"]. A hearing on the matter was held on March 22, 2006. Appearing at the hearing were Dean Wyman, trial attorney for the Office of the U.S. Trustee, Region 9 and Robert Whittington, counsel for debtor. Debtor was also present. After the presentation of oral argument by counsel,[1] the matter was taken under advisement. On August 28, 2006 the Court issued an Order requiring the parties to file supplemental information [docket # 51] which was timely filed [docket # 52 and # 54].

This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District on July 16, 1984. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334(b).

### BACKGROUND

1. Virgil Simmons filed a voluntary chapter 7 bankruptcy case on November 16, 2005. Accordingly, this case is governed by the Bankruptcy Code as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

2. As of the petition date, debtor owned his residence located at 590 Diagonal Road in Akron Ohio (the "Residence"). On Schedule A—Real Property, debtor lists the current market value of the Residence as $275,000.00 and on Schedule D—Creditors Holding Secured Claims, debtor indicates that the Residence is encumbered by three mortgages totaling $253,591.57.

3. On his "Chapter 7 Individual Debtor's Statement of Intention," debtor indicates that the Residence will be surrendered.

4. Debtor is single with one dependent, a nine year old child.

5. As of the petition date, debtor was employed as an I.T. Consultant with Sapphire Technologies and had been employed there for two years.

6. Because this case is governed by BAPCPA, debtor is required to file a "Statement of Current Monthly Income and Means Test Calculation" ("Means Test Form"). Debtor filed a Means Test Form with his petition (the "Initial Means Test

---

**1.** Prior to the hearing counsel agreed that only oral argument would be presented and that, if necessary, an evidentiary record would be created at a later time.

Form"). On the Initial Means Test Form, debtor indicates that a presumption of abuse pursuant to 11 U.S.C. § 707(b)(2) of the Bankruptcy Code does not arise. On March 15, 2006, debtor filed an amended Means Test Form (the "Amended Means Test Form") [docket # 39]. Debtor again indicates on the Amended Means Test Form that a § 707(b)(2) presumption of abuse does not arise.

7. After a review of debtor's Petition and Schedules, the United States Trustee ("UST") determined that this case is presumed to be an abuse pursuant § 707(b). *See* docket # 22. *See also* 11 U.S.C. § 704(b)(1) (2005). On February 10, 2006 the UST filed the Initial Motion to Dismiss. The UST's Supplemental Motion to Dismiss was filed on March 14, 2006.

## DISCUSSION

In the Motion to Dismiss, the UST advances two grounds for dismissal of this case. First, the UST contends that debtor did not accurately complete the Means Test Form and that, if the form was accurately completed, a presumption of abuse would arise pursuant to § 707(b)(2). The UST further argues that debtor would not be able to rebut the presumption of abuse and that his case should, therefore, be dismissed pursuant to § 707(b)(1). Second, the UST contends that, even if no presumption of abuse would arise, this case should be dismissed pursuant to § 707(b)(3) because debtor has an ability to repay a significant portion of his debt. Through supplemental pleadings, debtor and the UST have each filed what they contend to be an accurately completed Means Test Form. Debtor's calculation [docket # 52] will hereinafter be referred to as Debtor's Proposed Means Test Form and the UST's calculation [docket # 54] will hereinafter be referred to as UST's Proposed Means Test Form.

## A. ACCURATE COMPLETION OF THE MEANS TEST FORM

Prior to BAPCPA, § 707(b) included an automatic presumption in favor of granting a discharge to a chapter 7 debtor. Under BAPCPA that automatic presumption was eliminated and replaced with a rebuttable presumption of abuse when a debtor's Means Test Form shows a certain level of "current monthly income" that exceeds a defined state median income level and would, theoretically, enable the debtor to repay some portion of his debts. *See* 11 U.S.C. §§ 101(10A); 707(b)(2)(A)(i) and (b)(2)(B). Because the Means Test Form dictates whether a presumption of abuse will arise, its accurate completion is significant in determining whether a chapter 7 debtor will receive a discharge.

■ **1. Future Payments on Secured Claims:** Section 707(b)(2)(A)(iii)(I) sets forth one of several amounts that a debtor may deduct from his "current monthly income" and provides as follows:

(iii) The debtor's average monthly payments on account of secured debts shall be calculated as the sum of–

(I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; ...;

divided by 60.

The reporting requirements for § 707(b)(2)(A)(iii)(I) are captured on line 42 of the Means Test Form. Debtor's Proposed Means Test Form sets forth the following information on line 42:

| Name of Creditor | Property Securing the Debt | Average Monthly Payment |
|---|---|---|
| Charter One | House | $1,431.00 |
| Charter One | House 2d mtg | 110.00 |
| Charter One | Line of credit 3d mtg | 115.00 |
| Fifth Third | Car Lease | 388.35 |
| | | $2,044.35 |

*See* Line 42 of Debtor's Proposed Means Test Form [docket # 52]. Because debtor

indicated in his Petition that he would be surrendering the Residence, the UST contends that he may not deduct from his "current monthly income" the monthly payments due on the three mortgages so that only the $388.35 car lease payment should be included on line 42. *See* Line 42 of the UST's Proposed Means Test Form [docket # 54]. Both the UST and debtor argue that the "plain meaning" of § 707(b)(2)(A)(iii)(I) supports the information that each contends should be included on line 42.

When interpreting a statute, "[t]he language of the statute is the starting point for interpretation, and it should also be the ending point if the plain meaning of that language is clear." *United States v. Palacios–Suarez,* 418 F.3d 692, 697 (6th Cir.2005) *citing United States v. Boucha,* 236 F.3d 768, 774 (6th Cir.2001). Section 707(b)(2)(A)(iii)(I) was drafted with reference to amounts "scheduled as contractually due to secured creditors." When filing a petition in bankruptcy, debtors are required to set forth on Schedule D—Creditors Holding Secured Claims "all entities holding claims secured by property of the debtor as of the date of the filing of their petition." *See* Official Form B6D. There appears to be no dispute in this case that, as of the date of his petition, debtor was contractually obligated to the entities holding the three mortgages on his Residence. Although the UST does not dispute the debtor's obligations on these mortgages (or the listing of these three entities on Schedule D), he does contend that, because those obligations may terminate at some future time, debtor should be prohibited from deducting the amounts due on those obligations from his "current monthly income:"

2. The Debtor argues that this statute [§ 707(b)(2)(A)(iii)(I) ] authorized him to reduce his current monthly income by amounts that would have been due to secured creditors on account of his surrendered residence .... However-er, the Debtor's argument ignores the plain language of the statute which requires the existence of "payments on account of secured debts" in each month of the 60 months following the date of the petition before a debtor may calculate the sum of any such expenses. It also incorrectly assumes that when making the calculations required under this statute, courts must blindly apply the data contained in the Debtor's schedules and may ignore new facts that come to light after the petition date.

*See* Supplemental Motion to Dismiss at pg. 2 [docket # 37]. This argument ignores the unconditional manner in which § 707(b)(2)(A)(iii)(I) was drafted and reads into that statutory provision a subjective, post-petition element that Congress did not include.

The filing of a petition in bankruptcy does not eliminate a debtor's liability for debts due as of the date of filing and a debtor will remain liable on such debts until, generally, such time as a discharge is granted. *See. e.g.,* 11 U.S.C. § 727(b) (setting forth the scope of a chapter 7 discharge); § 523(a) (setting forth categories of debts which are excepted from a discharge); § 524(a) (setting forth the effect of a discharge) and § 349 (setting forth the effect of a dismissal of a case). *See also Hall v. Nat'l Gypsum Co.,* 105 F.3d 225, 229 (5th Cir.1997) (noting that "a discharge in bankruptcy does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt"). A debtor's liability is also not eliminated upon the surrender of the collateral that serves as security for a debt. *See* Black's Law Dictionary 422 (6th ed.1990) (defining "deficiency judgment" as the "imposition of personal liability on mortgagor for unpaid balance of mortgage

debt after foreclosure has failed to yield full amount of debt due"). Had Congress intended in § 707(b)(2)(A)(iii)(I) to limit which secured debts could be deducted from a debtor's "current monthly income" it could have qualified the language used as it did in subsection (II) of that same statutory provision which permits the deduction of "additional payments due to secured creditors" only if such payments are for certain collateral that is "necessary for the support of the debtor and the debtor's dependents." *See* § 707(b)(2)(A)(iii)(II). *See also United States v. Dangdee,* 616 F.2d 1118, 1119–20 (9th Cir.1980) (noting that by omitting qualifying language in one part of a statute but not another, Congress intended for the unqualified provision to have a broad application).

Because a debtor's contractual liability is not eliminated upon the filing of a bankruptcy petition, Congress's use of the words "scheduled as contractually due" suggests that, for purposes of § 707(b)(2)(A)(iii)(I), a debtor may deduct from his "current monthly income" the total of all payments that are, as of the time of the filing, due in each of the 60 months following the petition date on any secured debt that is rightfully listed on Schedule D regardless of whether debtor will remain liable on such debt in the future. *See In re Walker,* 2006 WL 1314125 (Bankr.N.D.Ga. May 1, 2006). *But see In re Skaggs,* 349 B.R. 594 (Bankr. E.D.Mo.2006). To read into this provision some qualification based upon only a possible post-petition modification of secured debt that is otherwise contractually due on the petition date would go beyond the clear and plain meaning of the statute.

■ The UST further contends that debtor's stated intention to surrender the Residence should preclude him from deducting mortgage payments due on that property from his "current monthly income."

3. As an initial matter, the Debtor's commitment to surrender his residence eliminated any "payments on account of secured debt" and any "amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition." Section 521(a)(2)(A) requires a debtor to file a statement of intention as to whether he or she intends to retain or surrender property secured by debt within 30 days of the earlier of the petition date and the date of the meeting of creditors. Section 521(a)(2)(B) then requires that the debtor perform that expressed intention within 30 days after filing the statement of intention. Section 702 of the Bankruptcy Code requires the U.S. Trustee to review "all materials filed by the debtor" to assess the debtor's income and expenses and determine whether a presumption of abuse arises. Include among these "materials" is the Debtor's Statement of Intention.

*See* Supplemental Motion to Dismiss at pp. 2–3 (footnote omitted) [docket # 37]. Although BAPCPA does require a debtor to state his intention as to whether certain property will be retained or surrendered, neither the filing of such a statement nor a debtor's failure to act in accordance with the stated intent will affect debtor's obligation on the underlying debt related to the subject property. *See* 11 U.S.C. § 362(h) (failure to act in accordance with § 521(a) stated intention will terminate automatic stay). This argument by the UST places too much emphasis on the § 521(a) filing requirement and ignores the fact that the surrender of property which acts as security for a debt does not eliminate a debtor's contractual obligation on the underlying debt. Such argument also ignores the fact that a chapter 7 debtor who

states an intention to surrender property may ultimately be able to negotiate an affordable reaffirmation agreement with the secured creditor so as to retain the collateral that acts as security for the debt or obtain funds needed to redeem the property pursuant to § 722. *See also* Ohio Revised Code § 2329.33 (which would provide debtor with a state law right to redeem the Residence prior to confirmation of the foreclosure sale).

During the hearing on this matter, and in support of his client's contention that the means test should be forward looking in scope, counsel for the UST directed the Court's attention to line 35 of the Means Test Form which permits deductions of "the actual monthly expenses that [debtor] will *continue to pay* for the reasonable and necessary care and support of an elderly, chronically ill, or disabled member of [debtor's] household or member of [debtor's] immediate family who is unable to pay for such expenses." *See* 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added). *See also* Line 35 of the Means Test Form. While it is true that some portions of the Means Test Form permit a debtor to make deductions for only actual expenses they will continue to have in the future, § 707(b)(2)(A)(iii)(II) is simply not one of those sections and this Court will not read

into that statutory provision a forward looking element that Congress did not include.[2]

**2. Excess Home Energy Expense Deduction:**[3] Section 707(b)(2)(A)(ii)(V) sets forth another amount that a debtor may deduct from his "current monthly income" and provides as follows:

(ii)(V) In addition, the debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.

The reporting requirements for § 707(b)(2)(A)(ii)(V) are captured on line 37 of the Means Test Form. At line 37 of Debtor's Proposed Means Test Form debtor has claimed $235.00 in excess housing and utility costs. In the Motion to Dismiss, the UST takes issue with this $235.00 deduction given debtor's failure to present documentation to demonstrate that the additional amount is reasonable and necessary. *See* Initial Motion to Dismiss [docket # 27] at pg. 3. As to the

---

2. In their pleadings the UST and debtor each set forth arguments regarding the appropriate deductions that debtor should be allowed on line 23 of the Means Test Form regarding expenses for transportation expenses related to an owned or leased vehicle. However, during the hearing in this matter neither party specifically addressed this issue and in each of their proposed Means Test Forms the parties entered the same deduction for line 23(a). Although the amounts listed on line 23(b) differ slightly, this appears to be the result of a typographical error on debtor's form. *Compare* Line 23(b) of Debtor's Proposed Means Test Form (which lists $446.90 as the "Average Monthly Payment for any debts secured by Vehicle 1, as stated in Line 42") *with* Line 42 of Debtor's Proposed Means Test Form

(which lists $388.85 on account of Vehicle 1). Accordingly, this matter appears to no longer be at issue and will not be discussed any further herein.

3. In the Initial Motion to Dismiss the UST also takes issue with debtor's entry of $25.00 on line 39 of the Means Test Form for additional food and clothing expenses due to debtor's failure to present documentation demonstrating that the amount claimed was reasonable and necessary. *See* Initial Motion to Dismiss at [docket # 27] at pg. 3. This deduction was removed in Debtor's Proposed Means Test Form so this matter is no longer at issue herein.

required documentation of the "excessive" expenses, debtor attaches to his Response to the Initial Motion to Dismiss a copy of his February 2006 gas bill and requests that this Court "take judicial notice from the auditor's card attached to the debtor's schedule A that the size of the debtor's residence is 4,483 total square feet and the house was built in the year 1902, prior to the commencement of the common practice of installing insulation in dwellings." *See* Debtor's Response [docket # 36] at unnumbered pp. 6–7. Because the UST did not take issue with this proffered documentation in his Supplemental Motion to Dismiss or during the hearing on this matter the Court deems this issue to no longer be in dispute.

 Although never raised in his written pleadings, during the hearing on this matter counsel for the UST also argued that debtor should not be allowed to deduct any excess housing and utility costs because of his stated intention to surrender the Residence. As with § 707(b)(2)(A)(iii)(I), subsection (ii)(V) was not drafted to include a forward looking element. *See also, e.g.* RANDOM HOUSE WEBSTER'S DICTIONARY 8 (3d ed.1993) (defining "actual" as "existing in fact or reality" or "existing at the present time"). Instead, a debtor is permitted to deduct "excessive" housing and utility expenses if, as of the filing date, (1) such expenses exist; (2) such expenses are reasonable and necessary[4] and (3) debtor provides documentation of such actual expenses.

**B. DISMISSAL PURSUANT TO § 707(B)(3)**

 The UST also argues that, even if debtor did accurately complete the Means Test Form so that a presumption of abuse does not arise, this case should still be dismissed pursuant to § 707(b)(3) which sets forth the following:

(3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which a presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider:

(A) whether the debtor filed the petition in bad faith; or

(B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

The UST does not contend that debtor acted in bad faith by filing his bankruptcy petition. Rather, he contends that "[d]ebtor's ability to repay a significant portion of his unsecured debt, coupled with the fact that Debtor appears to have stable employment and one dependent, demonstrates that the totality of the circumstances in this case also warrant a dismissal under 11 U.S.C. Section 707(b)(3)." *See* Initial Motion to Dismiss at pg. 6 [docket # 27]. In support of his argument the UST cites to pre-BAPCPA cases interpreting the meaning of "substantial abuse" under former § 707(b). In response, debtor contends that "the enactment of the very specific means test algorithm contained in 11 U.S.C. Section 707(b)(2) renders all these judicially-created pre-BAPCPA standards moot." *See* Response to Initial Motion to Dismiss at unnumbered pg. 8 [docket # 36]. Debtor further contends that when a presumption of abuse does not arise pursuant to § 707(b)(2) a case can be

---

4. The UST has never contended that, *as of the filing date,* the "excessive" housing and utility expenses were not reasonable and necessary.

dismissed pursuant to § 707(b)(3) only upon a " 'strong showing' of debtor dishonesty and 'debtor actions before or during the case which, though honestly disclosed or not illegal or necessarily dishonest, are nonetheless manifestly unreasonable under the debtor's circumstances.'" *See* Response to Initial Motion to Dismiss at unnumbered pg. 10 [docket # 36] *citing* Marianne B. Culhane and Michaela M. White, *Catching Can–Pay Debtors: Is the Means Test the Only Way?*, 13 Am. Bankr. Inst. L.Rev. 665 (2005).

To date there are only a few reported cases which have dealt with the issue of whether a debtor's ability to repay a portion of his debts can be considered under the § 707(b)(3) totality of the circumstances test if, pursuant to the Means Test Form, that debtor has "current monthly income" that is equal to or below the applicable state median. *In re Pennington*, 348 B.R. 647 (Bankr.D.Del.2006); *In re Paret*, 347 B.R. 12 (Bankr.D.Del.2006); *In re Pak*, 343 B.R. 239 (Bankr.N.D.Cal.2006). In *In re Pak*, the court sets forth a through analysis of the issue which includes a discussion of the views espoused in the article cited by debtor.

The Culhane–White Article was written as a rebuttal to another recent law review article, authored by a Chicago bankruptcy judge, also highly respected for his expertise on BAPCPA. *See* Eugene Wedoff, *Means Testing in the New 707(b)*, 79 Am. Bankr.L.J. 231 (2005) (the "Wedoff Article"). As noted in the Culhane–White Article, the Wedoff Article states that:

> Because the general abuse provisions of § 707(b)(3) expressly apply when the means test has been rebutted, "passing" the means test does not preclude a discretionary finding of abuse by the court .... If a debtor's overall financial circumstances would easily

allow the debtor to repay debts ... the court may find abuse.

Wedoff Article, at 236, n. 8. Thus, Judge Wedoff posits that an above-median debtor's case may be dismissed based on his ability to pay under either section 707(b)(2) or (3).

The Culhane–White Article disagrees with Judge Wedoff's statement. It characterizes his view as a judicial attempt to "fix" an imperfect statute. It opines that the plain language of the statute and cannons of statutory construction compel a different conclusion. Culhane–White Article at 677.

The rationale of the Culhane–White Article is as follows: Section 707(b)(2) represents an attempt to remedy two pre-BAPCPA problems, as perceived by Congress. First, section 707(b)(2) establishes definitely that ability to pay, standing alone, is a sufficient ground for dismissal as an abuse. Some courts have previously taken a contrary view. Second, section 707(b)(2) established a "bright line" test for a debtor's "ability to pay." One of the problems perceived by Congress in this context was the lack of uniformity of bankruptcy courts' decisions on this issue. Culhane–White Article at 678. According to the Culhane–White Article, part of this "bright line" test is the establishment of the median income as the dividing line for debtors whose ability to pay may serve as the basis for dismissal. Culhane–White Article at 679.

According to the Culhane–White Article "[t]o say that judges are free under section 707(b)(3) to substitute their own can-pay standards for Congress' means test would render the means test superfluous." It would also go against the cannons of statutory construction, requiring statutes to be interpreted so as to be

consistent with each other and to give meaning to all parts. *Id.* at 680.

*In re Pak,* 343 B.R. at 242.

In analyzing the language used by Congress in § 707(b)(3), the *Pak* Court notes a general canon of statutory construction that specific terms prevail over general ones in the same or another statute that might otherwise be controlling. *See e.g., Fourco Glass Co. v. Transmirra Products Corp.,* 353 U.S. 222, 228–29, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957). The *Pak* Court further notes that this canon offers some "substantial support" for the view taken in the Culhane–White Article. *In re Pak,* 343 B.R. at 243. "However, this rational cannot be applied to the debtor whose current monthly income is equal to or less than the median. For this debtor, there is no specific statute—i.e., 'means test'—for determining his ability to pay. There is only the more general one: i.e., section 707(b)(3)." *Id.*

As with the Court in *Pak,* this Court finds instructive Congress' use in § 707(b)(3) of the phrase "totality of the circumstances." Prior to the BAPCPA addition of subsection (b)(3), courts could consider whether to dismiss a chapter 7 case only under subsection (b)(1) and only if the granting of a chapter 7 discharge would be a "substantial abuse." Because Congress did not define the term "substantial abuse," courts were left to interpret its meaning and they did so by looking at what they consistently termed the "totality of the circumstances" surrounding the debtor's case. *In re Lamanna,* 153 F.3d 1, 4–5 (1st Cir.1998); *In re Green,* 934 F.2d 568, 572–73 (4th Cir.1991); *In re Cortez,* 457 F.3d 448, 456 n. 7 (5th Cir. 2006); *In re Behlke,* 358 F.3d 429, 434 (6th Cir.2004); *In re Krohn,* 886 F.2d 123, 126 (6th Cir.1989); *Hebbring v. United States Trustee,* 463 F.3d 902, 906 (9th Cir.2006); *In re Stewart,* 175 F.3d 796, 809 (10th Cir.1999). In considering what factors should make up this "totality of the circumstances" test, the vast majority of cases held that it included the debtor's ability to repay his debts. *See In re Attanasio,* 218 B.R. 180, 184 n. 6 (Bankr. N.D.Ala.1998). Given the plethora of pre-BAPCPA cases which considered a debtor's ability to pay within the context of the "totality of the circumstances" to be considered in determining whether a chapter 7 case should be dismissed for substantial abuse, this Court agrees with the *Pak* Court that "[i]t would counterintuitive to construe this same phrase, as used in BAPCPA, to exclude a consideration of the debtor's ability to pay."

## CONCLUSION

Based upon the foregoing, this Court concludes that debtor accurately completed the Means Test Form so that no presumption of abuse arises in this case pursuant to § 707(b)(2). The Court further finds that the debtor's ability to repay a portion of his debts can be considered as part of the "totality of the circumstances" surrounding this case for purposes of the UST's Motion to Dismiss under § 707(b)(3). During the hearing on this matter counsel did not present any evidence regarding the UST's challenge under § 707(b)(3). Accordingly, the Court, by separate Order, will schedule an evidentiary hearing on that matter.