**In re Clarence C. ZAK and Elaine R. Zak, Debtors.**

No. 06–41241.

United States Bankruptcy Court, N.D. Ohio.

Jan. 12, 2007.

Jerome A. Lemire, Jefferson, OH, for Debtor.

## MEMORANDUM OPINION

KAY WOODS, Bankruptcy Judge.

The cause before the Court is the United States Trustee's Motion to Dismiss Case Pursuant to 11 U.S.C. Section 707(b)(1) ("Motion to Dismiss") filed by the United States Trustee for Region 9 ("UST") on November 24, 2006. Debtors Clarence C. Zak and Elaine R. Zak ("Debtors") filed Debtors' Response to United States Trustee's Motion to Dismiss Case Pursuant to 11 U.S.C. Section 707(b)(1) ("Response") on December 28, 2006.

UST seeks dismissal of Debtors' case on alternative grounds, as follows: (i) that a presumption of abuse arises and is not rebutted; or (ii) if the court finds that there is no presumption of abuse, that, under the totality of the circumstances, there is abuse that warrants dismissal. The Court held a hearing on the Motion on January 4, 2007, at which only the issue of presumption of abuse was addressed by the parties.

Although UST acknowledges that Debtors' form B22A indicates monthly disposable income in the amount of negative $739.92, he maintains that this number is incorrect because Debtors have impermissibly taken certain deductions. Specifically, UST objects to deductions for: (i) "future payments on secured claims" in the amount of $1,250.00; (ii) past due payments on secured claims in the amount of $175.54; (iii) "ownership/lease expense; vehicle 1" in the amount of $471.00; and (iv) "ownership/lease expense; vehicle 2" in the amount of $332.00. UST argues that the deductions relating to Debtors' mortgage on residential real estate are not permitted because "JP Morgan Chase reduced its promissory note to judgment on May 2, 2006, thereby extinguishing its rights under the note as a matter of law." (Motion to Dismiss at 6.) UST further contends that Debtors are not entitled to the ownership/lease expense deductions because Debtors own their two vehicles free and clear.

Debtors counter that, because they "are contractually obligated under a promissory note and mortgage agreement to make monthly mortgage payments," they are entitled to take the deductions in lines 42 and 43 of form B22A. (Response at 2.) Debtors concede that they own a 2001 Chevy S–10 pickup truck and a 1993 Pontiac Bonneville that are not subject to any security interests or debt payments. Debtors maintain, however, that they are still entitled to deduct ownership/lease expenses for the two vehicles.

This Court has jurisdiction pursuant to 28 U.S.C. § 1334. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). The following constitutes the Court's findings of fact and conclusions of law pursuant to FED. R. BANKR.P. 7052.

For the reasons set forth below, this Court denies the Motion to Dismiss on the basis that there is a presumption of abuse, and will set the Motion for further hearing on the alternative basis for dismissal.

### FACTS

Debtors filed a voluntary chapter 7 petition on August 11, 2006 (the "Petition Date"). Debtors' schedules indicate that Mr. Zak is employed at General Motors

and receives net monthly income of $3,991.29, Mrs. Zak is not employed and Debtors list their 20 year old son as a dependent. (Schedule I.) Debtors' Statement of Financial Affairs lists Mr. Zak's gross income as $81,060.00 in 2004 and $71,750.14 in 2005. (Statement of Financial Affairs, response to question 1.) Debtors' annual income exceeds the relevant median income for a family of three in Ohio and, thus, Debtors must "pass" the means test in order to defeat a presumption of abuse.[1] Debtors list total monthly expenses in the amount of $3,975.38, which includes $1,250.00 for rent or home mortgage. (Schedule J.) Debtors did not list any amount for installment payments for automobiles on Schedule J. Debtors list primarily consumer debts. (Debtors Petition at 1.) Of the $112,773.88 in unsecured nonpriority debt on Schedule F, approximately 43% is "student loan" debt. Debtors list secured debts for an ATV, real estate taxes, purchase money security interest in a computer and a first mortgage on residential real estate, but did not list any secured claims on either the 2001 Chevy S–10 or the 1993 Bonneville. (Schedule D.) Debtors state they have an interest in real estate located at 6481 Beckwith Hunter Road, Jefferson, Ohio (the "Real Estate") with a value of $66,200.00. The Real Estate is subject to a secured claim in the amount of $131,070.23. (Schedule A.) Debtors state that they intend to surrender the Real Estate. (Chapter 7 Individual Debtor's Statement of Intention.)

Prior to the Petition Date, on May 2, 2006, JP Morgan Chase ("Chase") ob-

tained a "Judgment Entry and Foreclosure Decree," which included judgment upon a promissory note against Debtors in the amount of $130,457.00 together with interest at the rate of $35.11 per diem from March 6, 2005. (Statement of Financial Affairs.) Debtors completed the "means test" by filling out form B22A. Form B22A shows monthly income, after deductions, in the amount of negative $739.92. As set forth above, these deductions include $1,250.00 and $175.54 relating to secured claims for the Real Estate and $471.00 and $331.00 as ownership/lease expenses for the two vehicles.

On August 23, 2006, Chase filed a Motion for Relief From Stay and Abandonment, which was not opposed by Debtors. As a consequence, this Court entered an Order dated September 27, 2006 granting relief from the automatic stay. Although relief from stay was granted, Debtors contend in the Response that they "have not abandoned their home." (Response at 3.) The September 27, 2006 Order provides, however, that "Trustee is authorized and directed to abandon [the Real Estate]." (Order at 2.)

## LEGAL ANALYSIS

Section 707 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") provides for dismissal of chapter 7 cases when there is a presumption of abuse. Section 707(b)(1) and (b)(2)(a)(i) read in their entirety:

> (b)(1) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, trustee (or

---

1. Passing the means test is a misnomer. If, after taking all allowable deductions, Debtors have net monthly income of less than $100.00, there is no presumption of abuse. If Debtors have net monthly income of more than $167.67 (*i.e.,* $10,000.00 to fund a sixty month plan), the filing is presumed to be an abuse. If Debtors' net monthly income is between $101.00 and $166.00, there will be a presumption of abuse if the amount of net monthly income multiplied by 60 months will pay 25% or more of the Debtors' non-priority unsecured debts.

bankruptcy administrator, if any), or any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts, or, with the debtor's consent, convert such a case to a case under chapter 11 or 13 of this title, if it finds that the granting of relief would be an abuse of the provisions of this chapter. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

(2)(A)(i) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of—

(I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or

(II) $10,000.

11 U.S.C. § 707 (West 2006).

The standard and actual expenses Debtors may claim are set forth in 11 U.S.C. § 707(b)(2)(A)(ii), (iii), and (iv). The expenses in question, *i.e.*, the deductions for the Real Estate and the vehicle ownership/lease expenses are set forth in the National Standards issued by the Internal Revenue Service ("IRS"). UST does not argue that Debtors have taken the wrong amount for such deductions, but rather argues that Debtors are not entitled to deduct any amounts for these items.

## A. Secured Claims for the Real Estate

■ Trustee argues that Debtors' deductions in the amount of $1,250.00 on Line 42 and $174.54 on Line 43 of form B22A are not permissible because such amounts do not constitute "amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition." 11 U.S.C. § 707(b)(2)(A)(iii)(II). UST argues that Debtors did not have on the Petition Date and currently do not have a contractual obligation to pay Chase because "Chase reduced its promissory note to judgment on May 2, 2006, thereby extinguishing its rights under the note as a matter of law." (Motion to Dismiss at 6.) UST fails to provide any support for this proposition and the Court has not found any applicable law in Ohio or the Sixth Circuit that supports this proposition. The closest support this Court could find for the UST's position was *In re Nockerts*, 357 B.R. 497 (Bankr.E.D.Wis.2006). In considering a motion to dismiss based on presumption of abuse, the *Nockerts* court found that "[a]lthough they did not intend to reaffirm the mortgage debts, on the date of the petition (and even as of the date of the U.S. Trustee's Motion to Dismiss), they had not surrendered the homestead. *Neither had any ther (sic) event occurred that would have relieved the Debtors of their contractual obligations to make scheduled mortgage payments, such as a foreclosure judgment* or sale of the property," (*Id.* at 504 (emphasis added).)

Although this Court did not find any case law directly on point, the Sixth Circuit has dealt with a debtor's right to cure a default on a mortgage in a chapter 13 plan. In *In re Glenn*, 760 F.2d 1428 (6th Cir.1985), the Sixth Circuit Court of Appeals held that the date of sale of the mortgaged property cuts off the statutory

right to cure defaults. (*Id.* at 1435.) The Court noted:

> In so ruling we avoid any effort to analyze the transaction in terms of state property law. Modern practice varies so much from state to state that any effort to satisfy the existing concepts in one state may only create confusion in the next. Thus, in construing this federal statute, we think it unnecessary to justify our construction by holding that the sale "extinguishes" or "satisfies" the mortgage or the lien, or that the mortgage is somehow "merged" in the judgment or in the deed of sale under state law.

*Id.* at 1436.

*In re Simmons,* 357 B.R. 480, (Bankr. N.D.Ohio 2006) held that (i) filing a bankruptcy petition does not eliminate a debtor's liability for debts due as of the petition date and a debtor will generally remain liable on such debts until a discharge is granted, and (ii) a debtor's liability is not eliminated upon surrender of collateral that serves as security for a debt. (*Id.* at 484.) *Simmons* contradicts the UST's position that a foreclosure judgment extinguishes contractual liability. As a consequence, this Court cannot hold that the deductions relating to the Real Estate are not permissible on the basis that Debtors' rights under the note were extinguished when Chase obtained the foreclosure judgment.

■ On the Petition Date, Debtors scheduled the promissory note as an amount contractually due to a secured creditor. In *Simmons,* Judge Shea–Stonum held that, for purposes of § 707(b)(2)(A)(iii)(I), "a debtor may deduct from his 'current monthly income' the total of all payments that are, as of the time of the filing, due in each of the 60 months following the petition date on any secured debt that is rightfully listed on Schedule D regardless of whether debtor will remain liable on such debt in the future." (*Id.* at 485.) In *Simmons,* the secured creditor had not obtained a pre-petition foreclosure judgment or obtained relief from stay prior to the time the motion to dismiss was filed, so those issues were not addressed therein.

Both parties cite *In re Singletary,* 354 B.R. 455 (Bankr.S.D.Tex.2006) in support of their positions regarding Debtors' eligibility to take the deductions for the promissory note secured by the Real Estate. The *Singletary* case has facts similar to the instant case and provides guidance to this Court.[2] The *Singletary* court held that, in applying the means test, the mere act of declaring an intent to surrender collateral on a Statement of Intention does not extinguish the right to deduct those payments under § 707(b)(2)(A)(iii), and further held that the relevant date to make the calculations was the date the motion to dismiss was filed rather than the petition date. (*Id.* at 458.) The court held that "if a debtor has carried through with his intent to surrender the collateral and relief from stay has been granted before the filing of the Presumption of Abuse Motion, the payments on that debt would not be counted under § 707(b)(2)(A)(iii)." (*Id.*)

In *Singletary,* the debtors indicated their intent to surrender (i) a truck that was subject to a security interest held by GMAC, and (ii) their house. Debtors included deductions for their mortgage and ownership/lease expense for the truck on

---

**2.** The Bankruptcy Court in *Singletary* was constrained to follow the precedent established by the Fifth Circuit Court of Appeals in *In re Cortez,* 457 F.3d 448 (5th Cir.2006), a pre-BAPCPA case. *Cortez* held that a bankruptcy court should consider post-petition events in deciding whether to dismiss a case for substantial abuse under § 707(b).

the means test. The UST moved to dismiss the case on the basis that a presumption of abuse arose because debtors were not entitled to take the deductions for collateral that they intended to surrender (*i.e.*, the house and the truck). Subsequent to filing the petition, GMAC filed a motion for relief from the automatic stay regarding the truck, which was granted. No action had been taken with respect to the house at the time the UST filed the motion to dismiss.

As the *Singletary* Court noted, "The only dispute between the parties is whether the Debtors are entitled to deduct payments on debts secured by property that the Debtors intend to surrender." (*Id.* at 463.) The Court determined that the UST could not rely on events that had not yet occurred as of the date of filing the motion to dismiss, but that events that had actually occurred should be taken into consideration. The Court held: "Under § 707(b)(2)(A)(iii), the Debtors should be allowed to include the payments on secured debts relating to assets which they intend to surrender in the future, but not the payments on secured debts relating to assets already surrendered as of the date the Presumption of Abuse Motion was filed." (*Id.* at 466.) The Court reasoned that debtors had a duty to update their schedules regarding changes to both income and expenditures. The Court noted that, as of the date the UST filed the motion, "relief from stay had already been granted on the [t]ruck, and it had been turned over to GMAC but no action had been taken on the [h]ouse other than the assertion of an intent to surrender in the original Statement of Intention." (*Id.* at 467.) Accordingly, the Court held that the truck should no longer be scheduled as a secured debt and the deduction would not be allowed, but the house would still qualify as a secured debt for purposes of allowing a deduction.

In the instant case, Chase has obtained relief from the automatic stay with respect to the Real Estate. Debtors maintain that they have not "abandoned their home." (Response at 3.) UST counters that, "The debtors did not oppose the request for relief from stay and abandonment.... When a debtor abandons and surrenders property to a secured creditor, the debtor may not deduct payments for such property...." (Motion at 6.)

■ Surrendering residential real estate is not as clear-cut as surrendering a vehicle. The Court considers whether Debtors surrendered the Real Estate by not opposing Chase's motion for relief from stay or by any other action. The Code does not define "surrender" and there is not a great deal of case law defining this term.

> It has been held that the term "surrender" differs from "abandonment," at least as applied to leased premises, inasmuch as the latter is simply an act on the part of the lessee alone; but to show surrender, a mutual agreement between lessor and lessee that the lease is terminated must be clearly proved. *Noble v. Sturm,* 210 Mich. 462, 178 N.W. 99 (1920), *Black's Law Dictionary* points out that "surrender" is a contractual act and occurs as a result of the consent of both parties. It appears that an abandonment may include a surrender, although a surrender may not necessarily constitute a total abandonment.

*In re Robertson,* 72 B.R. 2 at 4–5 (Bankr. D.Colo.1985). Likewise, in the context of a chapter 13 plan, the term "surrender" means "the relinquishment of any rights a debtor has in the collateral." *In re Cornejo,* 342 B.R. 834 at 836 (Bankr.M.D.Fla. 2005). A similar definition has been given in the context of chapter 12. "A 'surrender' of property means that the debtor relinquishes the property to the secured

creditor. The secured creditor then takes possession of the property and liquidates the property in accordance with applicable nonbankruptcy law." *Collier on Bankruptcy,* ¶ 1225.03[5]. (15th Ed.2006).

Although Debtors did not oppose Chase's motion for relief from stay, they continue to occupy, and declare that they have not "abandoned" the Real Estate. These actions do not demonstrate any contractual act to surrender the Real Estate and Debtors have not relinquished the Real Estate to Chase. As a consequence, this Court finds that Debtors have not surrendered the Real Estate despite their stated intention to do so. Accordingly, if the Court were to follow the reasoning in *Singletary*[3], it would hold that Debtors did not have to amend their schedules to exclude the mortgage payment and are, thus, entitled to take the deductions for secured debts relating to the Real Estate.

Thus, under either the *Simmons* or the *Singletary* analyses, Debtors are entitled to take deductions for secured debt relating to the Real Estate.

### B. Ownership/Lease Expense Deductions for Vehicles

■ UST also asserts that, because Debtors own two vehicles free and clear, they are not entitled to take deductions for ownership/lease expenses, as set forth in the IRS Standards. There is support for each party's position on this issue. *In re Carlin,* 348 B.R. 795 (Bankr.D.Or.2006) held that, in applying the means test, an above-median chapter 13 debtor could not deduct the standard ownership expenses for a motor vehicle that he owned free and clear. The *Carlin* Court, in agreeing with and following *In re Hardacre,* 338 B.R. 718, 725 (Bankr.N.D.Tex.2006) and *In re*

*McGuire,* 342 B.R. 608 (Bankr.W.D.Mo. 2006), quoted the *McGuire* Court:

> [T]he statute provides that a "debtor's monthly expenses shall be the debtor's applicable monthly expense amounts" under the Standards. If a debtor does not own or lease a vehicle, the ownership expense is not "applicable" to that debtor. Thus, if a debtor is not incurring expenses for the purchase or lease of a vehicle, the debtor cannot claim a vehicle ownership expense under the IRS Standards. This conforms with the IRS's application of the Standards.

*Id.* at 798, *quoting McGuire,* 342 B.R. at 613.

The *Hardacre, McGuire* and *Carlin* cases all involved application of the means test in a chapter 13 context. Although the means text is the same, the purpose and outcome of an objection to confirmation differs markedly from that of a motion to dismiss a chapter 7 case based on a presumption of abuse. In *In re Fowler,* 349 B.R. 414 (Bankr.D.Del.2006), Judge Walrath considered application of the deduction for ownership/lease expenses to a vehicle owned free and clear in the context of a motion to dismiss a chapter 7 case. In *Fowler,* the UST moved to dismiss on the basis that form B22A erroneously included a deduction of $471.00 for owning a car even though the debtor did not have a car payment. The Court analyzed the difference between application of the Standards to determine (i) a taxpayer's income for repayment of delinquent taxes and (ii) the presumption of abuse under the means test in § 707 of the Bankruptcy Code. For purposes of taxpayer liability, the Standards are used as a cap because the taxpayer may deduct the allowed standard amount or the amount actually paid, whichever is less. "Under section 707(b)(2)(A), the Local Standards are used

---

**3.** This Court is not bound by the Fifth Circuit precedent in *Cortez.*

not as a cap, but as the actual deduction to which the Debtor is entitled. In contrast, for IRS purposes, the Local Standards are used as a cap for expenses to which the taxpayer may be entitled." (*Id.* at 417.) The Court rejected the UST's interpretation of § 707(b)(2)(A)(ii)(I), saying:

[S]ince the means test treats the Local Standards not as caps but as fixed allowances, it is more reasonable to permit a debtor to claim the Local Standards ownership expense based on the number of vehicles the debtor owns or leases, rather than on the number for which the debtor make payment. This approach reflects the reality that a car for which the debtor no longer makes payment may soon need to be replaced (so that the debtor will actually have ownership expenses), and it avoids arbitrary distinctions between debtors who have only a few car payments left at the time of their bankruptcy filing and those who finished making their car payments just before filing.

*Id.* at 418–419. The Court went on to distinguish circumstances in a chapter 13 case from a chapter 7 case.

The Court respectfully disagrees with the decisions in *McGuire* and *Hardacre* and agrees with the decision of the *Demonica* Court. The Court in *McGuire* correctly noted that the Local Standards for transportation applied to vehicles owned by a debtor and stated that "[i]f a debtor does not own or lease a vehicle, the ownership expense is not 'applicable' to that debtor." 342 B.R. at 613. The *McGuire* Court then concluded, however, that "if a debtor is not incurring expenses for the purchase or lease of a vehicle, the debtor cannot claim a vehicle ownership expense under the IRS Standards. This conforms with the IRS's application of the Standards." *Id.* It appears that the *McGuire* Court was

equating "ownership" with "liability for debt." Further, the *McGuire* Court acknowledged that during the life of the debtor's plan, he probably would need to purchase a new car. *Id.* at 614. The Court stated that, if that happened, the debtor would be able to seek an adjustment of his plan payments to account for that. *Id.* Obviously, this Court in determining a motion to dismiss a chapter 7 case, cannot do that.

*Id.* at 420.

While characterizing *Fowler* as a minority approach, the Court in *In re Wilson*, 356 B.R. 114 (Bankr.D.Del.2006) examined the competing rationales for allowing or disallowing ownership/lease expense deductions for vehicles owned free and clear and found the reasoning of *Fowler* persuasive. (*Id.* at 420–21.) The Court noted that, led by *Fowler*, this approach had been followed by *In re Hartwick*, 352 B.R. 867 (Bankr.D.Minn.2006), *In re Haley*, 354 B.R. 340 (Bankr.D.N.H.2006), and *In re Farrar–Johnson*, 353 B.R. 224, 230–31 (Bankr.N.D.Ill.2006) (applied reasoning and reached the same conclusion regarding house expense). This Court also agrees with the *Fowler* reasoning, especially in light of the distinction between an objection to confirmation of a chapter 13 plan, which is subject to being amended upon changed circumstances, and a motion to dismiss a chapter 7 case based upon a presumption of abuse. Accordingly, this Court holds that, for purposes of determining the presumption of abuse, Debtors are entitled to take the ownership/lease deductions for their two vehicles, despite the fact that they currently have no car payments.

### CONCLUSION

As set forth above, Debtors are entitled to take the deductions for the Real Estate and the ownership/lease expenses for the two vehicles. As a consequence, without

the elimination of those deductions, there is no presumption of abuse.[4] Accordingly, UST's Motion to Dismiss based upon presumption of abuse is denied.

As noted above, however, UST's Motion to Dismiss is based upon an alternative ground. The parties only argued the issue of presumption of abuse and did not present any evidence regarding whether Debtors' case should be dismissed for abuse based on the totality of the circumstances. Consequently, that part of the Motion to Dismiss remains open. Accordingly, it will be necessary to conduct an evidentiary hearing to determine whether Debtors' case should be dismissed for abuse based on the totality of the circumstances under § 707(b)(3). Counsel for Debtors and UST are directed to confer about the number of witnesses and exhibits each side anticipates utilizing so that the Court can set aside adequate time for a hearing. After conferring, but no later than January 26, 2007, the parties are directed to jointly call the Courtroom Deputy to obtain a date and time for the continued hearing on the Motion to Dismiss.

An appropriate order will follow.

### ORDER

For the reasons set forth in this Court's Memorandum Opinion entered on this date, the Court denies, in part, United State's Trustee's Motion to Dismiss Case Pursuant to 11 U.S.C. Section 707(b)(1) ("Motion to Dismiss") filed by the United States Trustee for Region 9 on November 24, 2006, which sought alternative relief on the grounds that (i) a presumption of abuse arises and it is not rebutted and (ii) if there is no presumption of abuse, that, under the totality of the circumstances, there is abuse that warrants dismissal. The Court denies the Motion to Dismiss on the grounds that there is no presumption of abuse pursuant to 11 U.S.C. § 707(b)(1) and (b)(2)(a)(i). The Court holds in abeyance the ruling as to whether there is abuse pursuant to 11 U.S.C. § 707(b)(3) until an evidentiary hearing can be conducted. Counsel for Debtors Clarence C. Zak and Elaine R. Zak and UST are ordered to confer about the number of witnesses and exhibits that each party anticipates utilizing at the evidentiary hearing on the totality of circumstances pursuant to 11 U.S.C. § 707(b)(3), so that the Court can set aside adequate time for hearing. After conferring, but no later than January 26, 2007, the parties are ordered to jointly call the Courtroom Deputy to obtain a date and time for the continued hearing on the Motion to Dismiss.

**IT IS SO ORDERED.**

---

4. Although there is no presumption of abuse, UST may argue Debtors' actual mortgage and vehicle expenses in urging abuse under § 707(b)(3).