In re Jeffrey Gerard **LINDSTROM**, Debtor.

No. 06–10686 EEB.

United States Bankruptcy Court, D. Colorado.

Dec. 12, 2007.

John Turner, Colorado Springs, CO, for Debtor.

Leo M. Weiss, Denver, CO, for U.S. Trustee.

### ORDER

ELIZABETH E. BROWN, Bankruptcy Judge.

THIS MATTER comes before the Court on the Motion to Dismiss, filed by the United States Trustee ("UST") and the Debtor's response. Under changes made by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), a debtor's Chapter 7 case may be dismissed under 11 U.S.C. § 707(b) if a court finds that the granting of relief would be "an abuse" of the provisions of Chapter 7. Under subsection 707(b)(2), a "presumption of abuse" will arise if a debtor fails to meet the so-called "Means Test." [1] The Means Test essentially gauges a debtor's ability to repay his or her debts by measuring how much disposable income the debtor will have each month, after the deduction of allowable expenses. [2] The issue in this case is whether, under 11 U.S.C. § 707(b)(2)(A)(iii)(I), the Debtor can deduct, as an allowable expense, monthly payments on a car loan when the car was repossessed prior to the filing of the UST's motion to dismiss.

### I. BACKGROUND

At the time of his bankruptcy filing, the Debtor owned a 2005 Ford F–150 pickup truck (the "Truck"). When he filed his voluntary Chapter 7 petition on February 28, 2006, he listed the Truck as an asset on his Schedule B, and the corresponding secured car loan owed to Fireside Bank ("Fireside") on his Schedule D. On the petition date, he also filed a Statement of Intention, indicating that he intended to surrender the Truck to Fireside at some point during his bankruptcy. Fireside moved for, and the Court granted, relief from stay to repossess the Truck. Following the repossession, the UST filed his Motion to Dismiss, arguing several points of error in the Debtor's calculations on his

---

1. All references to "section" shall refer to Title 11, United States Code, unless expressly stated otherwise.

2. See generally In re Scarafiotti, 375 B.R. 618, 623 (Bankr.D.Colo.2007).

Statement of Current Monthly Income and Means Test Calculation, Form B22A, including that the Debtor has deducted $700 in monthly Truck Payments. The parties resolved all of the other issues raised in the UST's motion, except the deduction of these Truck payments.[3]

## II. DISCUSSION

There is an emerging split of authority on the issue of whether a debtor must retain the collateral securing a particular debt in order to claim the § 707(b)(2)(A)(iii)(I) deduction for the payments on that secured debt.[4] These differing interpretations focus on the statutory phrase "amounts *scheduled as contractually due*" in § 707(b)(2)(A)(iii)(I). The majority follows the reasoning first laid out by the court in *In re Walker*.[5] The *Walker* court concluded that this language covers payments owed under a contract at the time of filing of the petition, whether or not they are actually paid.[6] Use of the phrase "scheduled as contractually due" allows for the possibility that the payments may not actually be made by a debtor either because the debtor will surrender the collateral or because the

payments might be modified and paid through a Chapter 13 plan.[7] As a result of this interpretation, "nothing the debtor does or does not do changes the fact that scheduled payments remain contractually due."[8] If Congress had intended to permit the deduction of only those payments that would actually be made postpetition, Congress could have done so.[9]

Further, the *Walker* court points out that the very structure of the Means Test indicates it is a backward-looking, "snapshot" test, designed to determine whether a debtor is in need of bankruptcy relief on the petition date.[10] To consider postpetition actions would be inconsistent with the intent of the statute.[11] The court acknowledged that consideration of a debtor's actual postpetition expenses might result in more accurate picture of the debtor's financial condition.[12] This possibility, however, was not a sufficient basis to overcome the plain language of the statute because, "section 707(b)'s presumption of abuse was not intended to and does not produce the most accurate prediction of the debtor's actual ability to fund a Chapter 13 plan."[13] Instead, it is only a "mechanical estimate of the debtor's abilities

---

3. The facts in this matter are undisputed and the parties have submitted it to the Court on supporting briefs, without requesting an evidentiary hearing.

4. To date, neither the Tenth Circuit nor any other Circuit court has provided any guidance on this particular topic.

5. 2006 WL 1314125 (Bankr.N.D.Ga.2006). Courts that follow *Walker* include: *In re Simmons*, 357 B.R. 480 (Bankr.N.D.Ohio 2006); *In re Nockerts*, 357 B.R. 497 (Bankr.E.D.Wis. 2006); *In re Randle*, 358 B.R. 360 (Bankr. N.D.Ill.2006); *In re Hartwick*, 359 B.R. 16 (Bankr.D.N.H.2007); *In re Mundy*, 363 B.R. 407 (Bankr.M.D.Pa.2007); *In re Longo*, 364 B.R. 161 (Bankr.D.Conn.2007); *In re Galyon*, 366 B.R. 164 (Bankr.W.D.Okla.2007); *In re Kogler*, 368 B.R. 785 (Bankr.W.D.Wis.2007); *In re Palm*, 2007 WL 1772174 (Bankr.D.Kan.

2007); *In re Wilkins*, 370 B.R. 815 (Bankr. C.D.Cal.2007); *In re Kelvie*, 372 B.R. 56 (Bankr.D.Idaho 2007); *In re Benedetti*, 372 B.R. 90 (Bankr.S.D.Fla.2007).

6. *In re Walker*, 2006 WL 1314125 at *3–4.

7. *Id.* at *4.

8. *Id.*

9. *Id.*

10. *Id.* at *5.

11. *Id.*

12. *Id.* at *6.

13. *Id.*

to fund a Chapter 13 plan and was not intended to be a perfect indicator of ability to pay." [14]

The contrary view, first published in *In re Skaggs*,[15] concludes that the phrase "scheduled as contractually due" refers to the schedules and statements accompanying a bankruptcy petition.[16] According to this view, if the debtor indicates on his statement of intention that a particular item will be surrendered during the course of the bankruptcy, then that item necessarily cannot be encumbered by a debt that will be "scheduled" throughout the course of the bankruptcy.[17] As support for this rationale, the court in *Skaggs* notes that "Congress used the phrase 'scheduled as' several times in the Bankruptcy Code to refer not to the common dictionary meaning for the word schedule (i.e., 'to plan for a certain date'), but to whether a debt is identified on a debtor's bankruptcy schedules." [18] The court goes on to find that "[n]othing in 11 U.S.C. § 707(b)(2)(A)(iii) indicates an intent to assign a different meaning to the phrase 'scheduled as' in this provision and to do so would run contrary to the statute." [19] The court therefore concludes that "the Debtors' schedules and statements form the basis from which the Court should determine whether a debt is 'scheduled as contractually due.' " [20] The *Skaggs* court, and other courts that following its reasoning, believe this interpretation carries out Congress' intent in passing BAPCPA, by ensuring that those who can afford to repay some portion of their debts will be required to do so.[21] The UST relies on the *Skaggs* analysis in arguing that the Debtor should not be allowed to claim the Truck payments because his Statement of Intention, filed on the petition date, indicated his intent to surrender the Truck.

A third line of cases, originating with the decision in *In re Singletary*,[22] also rejects the "snapshot" approach of *In re Walker* and concludes a court must consider postpetition events in applying § 707(b)(2)(A)(iii).[23] Unlike *Skaggs*, however, the *Singletary* court holds that the determinative issue is whether debtor has *actually surrendered* the collateral at issue by the time the motion to dismiss is filed.[24] Thus, under *Singletary*, if the debtor has already surrendered the property on the date the motion to dismiss is filed, as is the case here, the debtor is not permitted to take the deduction.[25] If the debtor has merely filed a Statement of Intention indicating possible surrender, but has not actually surrendered the collateral, then the debtor is permitted to take the § 707(b)(2)(A)(iii) deduction.[26]

---

14. *Id.*

15. 349 B.R. 594 (Bankr.E.D.Mo.2006).

16. Courts following the decision in *In re Skaggs* include: *In re Harris*, 353 B.R. 304 (Bankr.E.D.Okla.2006) and *In re Ray*, 362 B.R. 680 (Bankr.D.S.C.2007).

17. *In re Skaggs*, 349 B.R. at 599–600.

18. *Id.* at 599.

19. *Id.*

20. *Id.*

21. *Id.* at 600.

22. 354 B.R. 455 (Bankr.S.D.Tex.2006).

23. Courts following *Singletary* include *In re Tamez*, 2007 WL 2329805 (Bankr.W.D.Tex. 2007) and *In re Zak*, 361 B.R. 481 (Bankr. N.D.Ohio 2007) (in dicta only).

24. *In re Singletary*, 354 B.R. at 467–68.

25. *Id.*

26. *Id.* The *Singletary* decision has been criticized for relying on pre-BAPCPA precedent in construing § 707(b)(2)(A)(iii). *See, e.g., In re Nockerts*, 357 B.R. 497, 501 (Bankr.E.D.Wis. 2006) (criticizing the *Singletary* court's reliance on *In re Cortez*, 457 F.3d 448 (5th Cir. 2006)).

This Court finds the analysis of *In re Walker* to be the more persuasive because it adheres most closely to both the language of the statute and the overall function of the Means Test. The plain meaning of "scheduled as contractually due" refers to two things: (1) a scheduled secured debt and (2) a debt on which, as of date of filing, payments remain contractually due in each of the 60 months following the petition date. The Statement of Intention is not a "schedule" of debts.[27] And while it speaks to the debtor's future intentions in regard to property, it does not address whether a debtor is contractually *obligated* to pay a debt, only whether he *intends* to pay the debt.

Many of the cases addressing this issue focus on whether "scheduled as" should be given its dictionary meaning of "to plan for a certain date,"[28] or its common usage in bankruptcy, meaning those assets and liabilities identified on a debtor's bankruptcy schedules.[29] The Court finds this to be a distinction without a difference since, under either definition, "scheduled as" is modified by "contractually due." Listing a debt on bankruptcy schedules or even on a

statement of intent does not eliminate a debtor's contractual liability.[30] Thus, whether a secured debt is "scheduled as" due in the dictionary sense, or is listed on bankruptcy schedules as debt owed by the debtor, the key determination is whether that debt was contractually due on the petition date.[31] The *Skaggs* and *Singletary* line of decisions give no meaning to the phrase "contractually due."

In addition, both terms "scheduled" and "contractually due" in § 707(b)(2)(A)(iii)(I) are modified by the phrase "in each month of the 60 months following the date of the petition[.]" This phrase does not require that a debtor actually pay the debt in each of the 60 months postpetition. Rather, when read in context of § 707(b)(2), the clause simply operates to define the period over which the debtor's "contractually due" payments are averaged.[32]

Moreover, the *Skaggs* and *Singletary* lines of cases render § 707(b)(2)(iii)(I) meaningless. Subsection (iii) of § 707(b)(2) is comprised of two parts, and it is the sum of these separate parts which determines the amount that a debtor may

---

27. *See also In re Galyon*, 366 B.R. 164, 169 n. 5 (Bankr.W.D.Okla.2007) ("The court thus respectfully disagrees with the unstated but clear implication of *Skaggs* that the Statement of Intention rendered the debt listed on the debtor's schedules as no longer 'scheduled.' ").

28. *See In re Walker*, 2006 WL 1314125 at *3.

29. *See In re Skaggs*, 349 B.R. at 599.

30. *See In re Haar*, 360 B.R. at 765–66.

31. *See In re Haar*, 360 B.R. at 766 (concluding that under either definition, "the antecedent language 'scheduled as' does not alone modify the term 'contractually due' in such a way so as to prevent a debtor from utilizing in the 'means test' equation payments being made on collateral that will ultimately be surrendered."); *In re Galyon*, 366 B.R. at 169

(concluding that outcome would be the same using either definition of "scheduled."); *In re Wilkins*, 370 B.R. 815, 819 (Bankr.C.D.Cal. 2007) ("The court's understanding of 'contractually due' makes the differing definitions of 'scheduled' insignificant."); *In re Simmons*, 357 B.R. 480, 485 (Bankr.N.D.Ohio 2006) ("Because a debtor's contractual liability is not eliminated upon the filing of a bankruptcy petition, Congress's use of the words 'scheduled as contractually due' suggests that … a debtor may deduct from his 'current monthly income' the total of all payments that are, as of the time of the filing, due in each of the 60 months following the petition date on any secured debt that is rightfully listed on Schedule D regardless of whether debtor will remain liable on such debt in the future.").

32. *In re Walker*, 2006 WL 1314125 at *3; *In re Haar*, 360 B.R. 759, 766 (Bankr.N.D.Ohio 2007).

deduct in connection with his secured debts. Subsection (iii)(II) includes as the second part of the equation "any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts." In most cases, these "additional payments" will be the "cure amount" necessary to repay any past due payments. Thus, not only the future payments due over the next 60 months, but past due amounts that might otherwise result in a loss of possession through stay relief and foreclosure or repossession. Only subsection (iii)(II) makes reference to payments that are necessary to maintain possession of secured property. If Congress had intended to limit this entire subsection to only those secured debt payments that were necessary to maintain possession, it could have eliminated subsection (iii)(I) altogether and omitted the word "additional" from (iii)(II), resulting in a new subsection (iii) as follows: "The debtor's average monthly payments on account of secured debts necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts." If Congress had enacted the statute with this language, then the actual and/or intended surrender of property would be relevant in considering the Truck payments. For whatever reason, Congress did not limit both aspects of this subsection.[33]

 Finally, this result comports with this Court's understanding of the Means Test as a mechanical, backward-looking test, designed to measure the debtor's ability to fund a chapter 13 plan as of the petition date. Congress wanted to ensure that debtors who have the ability to repay a portion of their debts be forced to do so through Chapter 13.[34] It wanted to eliminate the broad discrepancies in court decisions interpreting "substantial abuse" under the prior version of § 707(b).[35] To do this, they enacted the Means Test, which was intended to impose a "rigid and inflexible" set of expense standards.[36] To consider postpetition actions would be inconsistent with the creation of an inflexible test that considers only the petition date "snapshot."

**33.** See In re Walker, 2006 WL 1314125 at *4 (noting Congress included restrictive language in subsection (iii)(II) but not subsection (iii)(I)); In re Nockerts, 357 B.R. 497, 503–504 (Bankr.E.D.Wis.2006) (Applying the "negative pregnant" rule of statutory construction to subsections (iii)(II) and (iii)(I)).

**34.** In re Scarafiotti, 375 B.R. 618, 630 (Bankr. D.Colo.2007) (citing In re Hardacre, 338 B.R. 718, 720 (Bankr.N.D.Tex.2006)). See also Statement by President George W. Bush Upon Signing S. 256, reprinted in 2005 U.S.C.C.A.N. S7 (Apr. 20, 2005).

**35.** See H.R.Rep. No. 109–31 at 12 (2005), reprinted in 2005 U.S.C.C.A.N. 88, 99 ("The standard for dismissal—substantial abuse—is inherently vague, which has lead to its disparate interpretation and application by the bankruptcy bench.").

**36.** 145 Cong. Rec. H2718 (daily ed. May 5, 1999) (statement of Chairman Hyde); see also Statement of Administration Policy, Executive Office of the President (May 5, 1999), http:// clinton2.nara.gov/OMB/legislative/sap/HR 833–h.html ("H.R. 833 in its current form would limit access to Chapter 7 to debtors who meet an inflexible and arbitrary means test. . . . H.R. 833 simply takes IRS expense standards, which were not developed for bankruptcy purposes, and applies them rigidly to determine ability to repay in bankruptcy.").

Postpetition events are better addressed under the totality of the circumstances test set forth in § 707(b)(3). Under § 707(b)(3), a court considers "whether the debtor filed the petition in bad faith" or whether "the totality of the circumstances ... of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3). Under this test, courts may consider both current and future income and expenses, including a debtor's ability to repay his debts under Chapter 13.[37] It allows the Court some flexibility in considering issues and circumstances which are not addressed by the rigid standards of the Means Test.[38] "To allow a movant to include the outcome of future events as part of the means test would eliminate the distinction between the presumption of abuse test and the totality of the circumstances test."[39] Accordingly, this Court finds that Debtor's postpetition surrender of the Truck is a factor to be considered under § 707(b)(3), but not under the plain language of § 707(b)(2)(A)(iii)(I).

In this case, the UST has not raised § 707(b)(3) as an additional ground for dismissal. While the Court has its own obligation to consider whether the granting of relief would be an abuse of Chapter 7 under that subsection, it can only make its determination based on the facts presented by the parties. The only facts presented by the UST relate to Debtor's surrender of the Truck. The Court finds that this fact alone does not warrant dismissal under § 707(b)(3).

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Debtor's claimed deduction for Truck payments under § 707(b)(2)(A)(iii)(I) is proper. Accordingly, it is hereby ORDERED that the UST's Motion is DENIED.

**37.** *In re Mundy,* 363 B.R. 407, 414 (Bankr. M.D.Pa.2007).

**38.** *See In re Scarafiotti,* 375 B.R. at 631.

**39.** *In re Hartwick,* 359 B.R. 16, 21 (Bankr. D.N.H.2007).