In re **ARCHITECTURAL DESIGN, INC.,** Debtor.

**ARCHITECTURAL DESIGN, INC.,** Appellant,

v.

**INTERNAL REVENUE SERVICE,** Appellee,

and

**Lola and Jerry Smith,** Debtors.

**Lola and Jerry SMITH,** Appellants,

v.

**INTERNAL REVENUE SERVICE,** Appellee.

Bankruptcy Nos. 7–8–00998–A, 7–82–01022–A.

Civ. A. Nos. 85–0403–A, 85–0402–A.

United States District Court, W.D. Virginia Abingdon Division.

April 25, 1986.

Robert T. Copeland, Abingdon, Va., for appellants.

Gerald Mene, U.S. Dept. of Justice, Washington, D.C., for appellee.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

The question presented by this case is what is the proper rate of interest to be applied to reflect present value on payments for priority unsecured tax claims deferred under 11 U.S.C. § 1129(a)(9)(C).

This case comes to the court on appeal from the Order of the United States Bankruptcy Court for the Western District of Virginia entered on November 25, 1985, 58 B.R. 652, determining that the appropriate rate of interest to reflect present value on payments for priority unsecured tax claims deferred under 11 U.S.C. § 1129(a)(9)(C) is the Internal Revenue rate of interest established by 26 U.S.C. § 6621.

### I.

Debtors, Jerry and Lola Smith, filed a Chapter 11 petition on August 6, 1982. Architectural Design, Inc. filed its bankruptcy petition on August 13, 1982. The Internal Revenue Service (IRS) has priority tax claims in each case. The Smiths' plan proposed to pay interest while repaying the tax claim at the federal judgment interest rate provided in 28 U.S.C. § 1961. Architectural Design's Plan did not provide for the payment of interest on the tax claim. The IRS objected to both plans as failing to provide for the proper payment of interest on the tax claims. The IRS contended that the proper interest rate on priority tax claims is the IRS interest rate applied to delinquent tax payments as established by 26 U.S.C. § 6621.

The matter was submitted to the Bankruptcy Judge for decision. The Bankruptcy Judge determined that the interest rate under 26 U.S.C. § 6621 was proper. All debtors appealed to this court contending that the Bankruptcy Judge erred in his determination and that the federal judgment interest rate is the appropriate rate of interest to be applied to priority unsecured tax claims.

### II.

Under the Bankruptcy Code, a debtor is permitted to pay taxes having priority under 11 U.S.C. § 507(a)(6) by means of deferred payments. The debtor is, however, required to provide the holder of the priority tax claim with "value, as of the effective date of the plan" equal to the allowed amount of the tax claim.[1] The decisive issue in this case is the proper interpretation of the phrase "value, as of the effective date of the plan" as it is used in connection with unsecured priority tax claims.

The phrase "value, as of the effective date of the plan" is used in several

---

1. Section 1129(a)(9)(C) provides:
    (C) with respect to a claim of a kind specified in section 507(a)(6) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

other sections of the Bankruptcy Code. The legislative history of § 1129(a)(9)(C) provides insight into the meaning of this phrase and indicates that it should receive consistent treatment:

'Value as of the effective date of the plan,' as used in paragraph (3) and in proposed 11 U.S.C. § 1179(a)(7)(B) (sic), 1129(a)(9), 1129(b), 1172(2) (sic), 1325(a)(4), 1325(a)(5)(B), and 1328(b), indicates that the promise payment under the plan must be discounted to *present value* as of the effective date of the plan. The discounting should be based only on the unpaid balance of the amount due under the plan, until that amount, including interest, is paid in full. 5 U.S.Code Cong. & Ad.News 6364 (1978); (emphasis added).

Thus, the phrase means that a creditor who is to receive deferred payments is entitled to receive interest in an amount that renders the deferred payments equivalent to the present value of the claim. The courts routinely follow this interpretation. See, e.g., *Matter of Southern States Motor Inns*, 709 F.2d 647, 650 (11th Cir.1983).

The concept of present value is ably explained by one commentator as:

a term of art for an almost self evident proposition: a dollar in hand today is worth more than a dollar received a day, month or a year hence. Part of the 'present value' concept may be expressed by a corollary proposition: a dollar in hand today is worth exactly the same as (1) a dollar to be received a day, a month or a year hence plus (2) the rate of interest which the dollar would earn if invested at an appropriate interest rate. 5 *Collier on Bankruptcy* para. 1129.03[i] at 1129–62.

Accordingly, the controlling variable is the "appropriate rate" to be applied. In arriving at an appropriate rate of interest, reference should be made to the rate that could be obtained by a "creditor making a loan to a third party with similar terms, duration, collateral, and risk." *Id.* This is what is commonly referred to as the current market rate approach for determining "present value" interest rates. See *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427, 431 (6th Cir.1982). This circuit has adopted the current market rate approach with respect to periodic payments under reorganization plans. *Grundy National Bank v. Tandem Mining Corp.*, 754 F.2d 1436, 1441 (4th Cir.1985).[2]

In deciding what the current market rate is with respect to unsecured tax claims, the IRS and appellants arrived at different conclusions. The IRS takes the position that the interest rate under § 6621 which is the interest rate assessed by the IRS against underpayment of taxes and also the rate paid by the IRS on tax overpayments is the appropriate rate. Appellants assert that the federal judgment interest rate provided by § 1961 is the appropriate rate. The federal judgment rate is the rate of interest allowed on any money judgment in a civil case received in a United States district court.[3]

■ The Bankruptcy Court decided in favor of the IRS determining that since both delinquent tax payments and deferred tax payments under reorganization represent tax liabilities, the relevant market interest rate with respect to these deferred payments is the interest rate applicable to delinquent tax payments.

After a careful review of the relevant statutes, legislative history and case law, this court is of the opinion that the Bankruptcy Court's decision was based on a correct interpretation of the law. Under the current market rate approach, consideration must be given to the interest rates applicable in similar transactions. In the case at bar, the transaction involved is the deferred payment of tax liabilities. Ac-

---

**2.** The court noted that the market rate might not be applicable in certain circumstances. For example, if the debt arises from an agreement reflecting a bargained for rate of interest, that rate of interest may be appropriate.

**3.** 28 U.S.C. § 1961.

cordingly, the current market rate analysis, adopted by this circuit, mandates that this court look to interest rates in other transactions involving the deferment of payments on tax liabilities.

The Bankruptcy Court decided properly in looking to interest rates governing late tax payments. No other transaction is as closely analogous.[4] Concededly, there are differences between the failure to pay taxes for whatever reason and deferring tax payments under the remedies provided by Congress under the bankruptcy laws. However, the fact remains, from a financial point of view of the government, tax liabilities are tax liabilities. Both late tax payments and deferred priority tax claims represent existing obligations due and owing the United States government. In effect, in both situations, the government is making involuntary loans of public funds to the taxpayer. If the government had to borrow money to make up for the lost revenue in either case, it would have to pay the same interest rate to its creditors. If the government had received the monies owing in either case, it could invest these funds in an investment providing the same rate of return. In short, the present value of both monies is the same to the government. Accordingly, with respect to the interest assessed on obligations owing the United States government, this court sees no legitimate basis for distinguishing between late tax payments and deferred priority unsecured tax claims under the bankruptcy laws.[5] Congress has, based on market conditions, set forth the interest rate established by § 6621 as the interest rate under which it will accept deferred tax payments on existing obligations arising under the tax laws. This rate is the appropriate rate of interest to be applied to reflect present value on payments for priority tax claims under 11 U.S.C. § 1129(a)(9)(C).

It should be noted that, in arriving at this decision, the court is mindful of the remarks made by the Eleventh Circuit in the *Matter of Southern States Motor Inns*, 709 F.2d 647 (11th Cir.1983). In that case, the Circuit Court acknowledged the relevance of § 6621 in determining the prevailing market rate but criticized looking exclusively to § 6621 when establishing the rate in question. *Id.* at 652. However, the Circuit Court ultimately adopted the then existing rate under § 6621 without providing a thorough analysis of the specific nature of the market rate. Accordingly, it left for other courts the responsibility to fashion a practical method to determine the interest rate that will provide the bar, debtors, and potential financiers of Chapter 11 plans with a readily ascertainable standard. This court believes that the adoption of the § 6621 rate, in accordance with the reasoning outlined above, with respect to deferred priority unsecured tax claims, is the most efficacious discharge of this responsibility.[6]

### III.

Appellants have raised some issues worthy of specific comment which will now be addressed. Appellants argue that application of § 6621 is contrary to public policy because it ignores fundamental difference between taxpayers seeking help under the bankruptcy laws and those who fail to pay their taxes for whatever reason. As noted previously, the court recognizes that there are distinctions to be made between these two categories of taxpayers. Nevertheless, this court also recognizes that from the government's point of view, both categories of tax liabilities represent monies

---

**4.** This court fails to see how the federal judgment interest rate is as closely related to deferred tax payments. The federal judgment interest rates applies to *any* money judgment in a civil case whether or not it involves taxes and whether or not the United States government is involved.

**5.** It appears that Congress has accounted for the distinctions between those who fail to pay their taxes for whatever reason and those who are

seeking protection under the bankruptcy laws by way of criminal provisions of the Internal Revenue Code.

**6.** This court does not adopt a single rate of interest with respect to all priority claims in reorganizations. The court only adopts the § 6621 rate of interest as a standard with respect to priority unsecured tax claims.

which are due the government. The public policy issue can best be resolved by looking to the purpose for enacting § 6621 to determine if the § 6621 rate incorporates a penal element. The legislative history of § 6621 reveals that the intended purpose of the interest rate calculation is to provide an incentive for a taxpayer to pay taxes promptly. This is achieved by approximating the interest rate the taxpayer could earn by applying the money to alternative uses. 4 U.S.Code Cong. & Ad.News 7478, 7479 (1974). Thus, § 6621 is not designed to punish for failure to pay taxes. It merely seeks to encourage taxpayers to pay their taxes promptly. Section 6621 does not appear to incorporate sanctions designed to take into account differences between taxpayers seeking protection under the bankruptcy laws and those who fail to pay their taxes. Using an interest rate which encourages prompt payment of taxes is not an affront to public policy.

Appellants also contend that the interest rate provided by § 6621 is inappropriate because it fails to take into account market factors for a determination under the current market rate theory. The legislative history counsels otherwise. While the § 6621 rate calculation was "not designed to reflect every money market factor which annually affects interest rates," it is based on the prime lending rate which "is sensitive to money market conditions and is widely known and accepted as a good indicator of interest rates generally." 4 U.S. Code Cong. & Ad.News 7478, 7696–97 (1974).

Appellants argue that the federal judgment interest rate is the more appropriate rate because it is based on treasury bill rates which are a more accurate reflection of economic conditions. This argument is based principally on the fact that treasury bill rates are adjusted 13 times per year while the § 6621 rate is adjusted semi-annually. However, as noted previously, the prime rate, upon which the § 6621 rate is based, is reflective of market conditions. Treasury bills may or may not be reflective of general market conditions. Treasury bill rates are subject to highly technical fluctuations which may have nothing to do with general market conditions. *Matter of Fi-Hi Pizza, Inc.*, 40 B.R. 258, 265 (Bkrtcy. D.Mass.1984). This court is not convinced that a rate which changes often and sometimes artifically is of necessity more appropriate than a rate which changes less often but in a more controlled fashion.[7]

For the reasons set forth above, the order of the Bankruptcy Court determining that the appropriate rate of interest to reflect present value on priority unsecured tax claims whose payment is deferred under § 1129(a)(9)(C) is the interest rate established by § 6621 will be affirmed by an Order entered by this court.

The Clerk is directed to send certified copies of this Memorandum Opinion to counsel of record and to the United States Bankruptcy Court for the Western District of Virginia.

---

7. At the time relevant to the case at bar, the § 6621 rate was higher than the § 1961 rate. However, no doubt, debtors would also be heard to complain should they be disadvantaged by fluctuations in the treasury bill rate.