**In re Christine Ann RHEIN, Debtor.**

**Bankruptcy No. 86–08208.**

United States Bankruptcy Court, E.D. Michigan, S.D.

March 4, 1987.

Gerald R. Gray, Jr., for debtor.

W. Schuyler Seymour, Jr., Flint, Mich., for Security Federal Credit Union.

## MEMORANDUM OPINION REGARDING CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN

ARTHUR J. SPECTOR, Bankruptcy Judge.

The issue in this case is whether, for purposes of § 1325(b) of the Bankruptcy Code, a plan must provide payment of the *present value* of the full amount of an allowed unsecured claim whose holder objects to the confirmation of the debtor's Chapter 13 plan if the plan does not provide that all of the debtor's disposable income for three years be applied to make payments under the plan.

The issue arose in the following manner. The debtor's Chapter 13 plan proposed a 100% repayment over three years to holders of unsecured claims without interest. Security Federal Credit Union, the holder of two unsecured claims, filed an objection to confirmation of the plan. The filing of the objection made confirmation of the plan subject to 11 U.S.C. § 1325(b)(1):

If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

The credit union argued that the debtor's Chapter 13 Statement disclosed that she was entitled to an estimated tax refund of $1,760.85, which she intended to retain rather than turn over to the trustee. The objection was that § 1325(b)(1)(B) requires that the court deny confirmation to a plan when an unsecured creditor objects to it unless all the debtor's projected disposable income for the three year period beginning on the effective date of the plan will be used to make payments under the plan. By retaining the income tax refund, the debtor was not pledging all of her disposable income which, the credit union maintained, could be used to pay a reasonable rate of interest on unsecured claims. The debtor's response was that she need not pledge all of her disposable income if the claim of the objecting unsecured creditor would be paid in full. Since all creditors would be paid in full under her plan, the debtor argued that § 1325(b) was satisfied and the plan should be confirmed. The credit union claimed that full payment of the face amount of the obligation is insufficient to satisfy § 1325(b)(1)(A) because it does not constitute the present value of the unsecured claim when payment thereof is stretched for three years from the date the plan is confirmed.

■ Does § 1325(b)(1)(A) mean that an unsecured creditor who objects to confirmation must be paid the present value of its claim or merely the face amount of the claim?

No opinion on this issue has yet been published. The commentators disagree on the question. Without citation or explanation, Colliers asserts that § 1325(b)(1)(A) "does not require payment of the present value of the claim, although such payments may be independently required under the best interest of creditors standard." 5 *Collier on Bankruptcy*, ¶ 1325.08(3), p. 1325–46 (1986). Norton, however, explains:

> Section 1325(b)(1)(A) is most similar in wording to Code § 1325(a)(5)(B)(ii). If interpreted consistently with the latter section, a debtor may avoid the objecting claimholder's attack on confirmation by proposing to pay the claimholder in full and in a manner preserving the present value of the allowed amount of the objecting claimholder's claim.

3 *Norton Bankruptcy Law and Practice*, § 75.10, p. 46. We accept the Norton position. We hold that the term "as of the effective date of the plan—the value of the property to be distributed under the plan" refers to the present value of a claim. It recognizes that from the standpoint of purchasing power, a dollar's value is less in the future than it is at present.

We hold this way because similar language appears in other locations in the Bankruptcy Code and carries that meaning. For example, § 1325(a)(5)(B)(ii) states that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of. such claim is not less than the allowed amount of such claim ...". With respect to confirmation of a Chapter 13 plan over the objection of a holder of an allowed secured claim, Collier's construes this section as meaning that:

> Section 1325(a)(5)(B)(ii) requires the court to determine the value of property to be distributed under the plan, as of the effective date of the plan. In other words, the court must ascertain the then *present value* of the property *to be distributed* ...

> The simplest method of equating the present value of deferred future payments with the amount of the allowed secured claim is to propose interest payments over and above the face amount of

the allowed secured claim at whatever interest rate is equivalent to the discount rate selected by the court or agreed upon by the parties ...

> The purpose of the present value requirement is to place the holder of an allowed secured claim in the same position economically as if the debtor exercised the option of surrendering the collateral. Through the payment of interest, the creditor is compensated for the delay in receiving the amount of the allowed secured claim, which would be received in full immediately upon confirmation if the collateral were liquidated.

5 *Collier on Bankruptcy*, ¶ 1325.06(3)(B), p. 1325–36, 37.

The best interests of creditors test found in § 1325(a)(4) states that the Chapter 13 plan may be confirmed if:

> *the value, as of the effective date of the plan,* of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date; (Emphasis added).

Section 1325(a)(4). *Colliers* describes this as meaning

> that the Chapter 13 plan offer the holder of each allowed unsecured claim property, including deferred payments, of a *present* value not less than the liquidation value of such claim. In other words, the court must capitalize the proposed payments, by converting deferred payments offered the creditor into an equivalent capital sum as of the effective date of the plan. Section 1325(a)(4) cannot be properly applied simply by comparing the sum total of the proposed deferred payments with the likely recovery on the unsecured claim in the event of liquidation.

*Id.* at 1325.05(2)(b), pp. 1325–20, 21. Our Court of Appeals in *In re Hardy*, 755 F.2d 75 (6th Cir.1985), explained that this provision requires that Chapter 13 plans offer even unsecured creditors interest for the delay in receiving their full payment, if the

hypothetical Chapter 7 case would have resulted in prompt full payment of their claims.

Likewise, cramdown on the holder of an allowed unsecured claim in Chapter 11 also requires that the present value of the claim be paid. Before a Chapter 11 plan can be crammed down, it must first pass the following test: it must not discriminate unfairly and is fair and equitable with respect toward holders of impaired claims who have not accepted the plan. § 1129(b)(1). Fair and equitable, with respect to a class of unsecured claims, means "the plan provides that each holder of a claim of such class receive or retain on account of such claim, property of a value, as of the effective date of the plan, equal to the allowed amount of such claim ...". § 1129(b)(2)(B)(i). As *Collier* states, "the concept of 'present value' is of paramount importance to an understanding of § 1129(b)." It means that the holder of an allowed unsecured claim is entitled to an appropriate rate of interest. 5 *Collier on Bankruptcy*, ¶ 1129.03(4)(i), p. 1129–62; *In re Architectural Design, Inc.*, 59 B.R. 1019, 1021, 14 B.C.D. 502 (W.D.Va.1986).

■ There is no reason why the words in one section in a code should have any different meaning ascribed to them than nearly identical words appearing in other sections of the same code. Indeed, they are to be interpreted consistently. 73 Am.Jur.2d *Statutes*, § 232 (1974); *In re Architectural Design, Inc.*, 59 B.R. at 1021. The debtor has not argued the existence of any policy which is contravened by this reading of § 1325(b)(1) and we cannot discern one on our own.

■ Because the plan does not propose the payment of the *value* of the credit union's unsecured claims, in order to confirm it, we must find that the debtor has pledged all of her disposable income to the plan for three years. Since her budget shows that she puts aside about $147.00 per month into a virtual savings account through the vehicle of overwithholding of income taxes from her wages, which savings have not been pledged to the use of the plan, the credit union's objection to

confirmation of the plan will be sustained. An order consistent with this opinion will be entered contemporaneously herewith.