**In re The BEARE COMPANY.**

**Bankruptcy No. 93–12462.**

United States Bankruptcy Court,
W.D. Tennessee,
Eastern Division.

July 15, 1994.

Robert A. Udelsohn, Udelsohn, Blaylock & Marlow, Memphis, TN, for debtor.

Lawrence R. Ahern, III, Bass, Berry & Sims, Nashville, TN, for First American Nat. Bank.

Jimmy L. Croom, Atty., Office of U.S. Trustee, Memphis, TN.

## FINDINGS OF FACT AND CONCLU- SIONS OF LAW RE INTEREST RATE DETERMINATION

G. HARVEY BOSWELL, Bankruptcy Judge.

This cause is before the Court for a determination of the appropriate interest rate to be paid to First American National Bank ("First American") on a pre-petition debt. This Court must first determine whether the interest rate on the pre-petition debt may be adjusted. If so, the court must then determine the proper rate of interest to be applied in order to comply with 11 U.S.C. § 1129. A court-ordered hearing regarding this matter was held on July 1, 1994.

The following will serve as findings of fact and conclusions of law pursuant to Rule 7052

of the Federal Rules of Bankruptcy Procedure.

The Chapter 11 debtor-in-possession, the Beare Company, obtained a pre-petition secured loan from First American National Bank at a 12% rate of interest. In its Chapter 11 plan, the Beare Company has proposed to pay back the full principal amount of the loan at 8% interest. In the event First American objects to these terms, Debtor proposes to "cram down" a rate of "prime" plus two percent (2%) under the provisions of 11 U.S.C. § 1129(b). First American objects to the proposed interest rates and argues that the contractual rate of interest should be used.

■ After carefully considering the arguments of counsel and thoroughly reviewing the case law in this area, the Court makes the following conclusions of law. First, it is undisputed that First American is oversecured, having a security interest in virtually all of Debtor's assets. Therefore, pursuant to 11 U.S.C. § 506(b), First American is entitled to be paid its contractual rate of interest (the original note interest rate of 12%) until the effective date of the plan, which is defined in the plan as being the eleventh (11th) day after the confirmation date. *See In re Bates*, 58 B.R. 915 (Bankr.W.D.Tenn.1986), *In re Apple Tree Partners, L.P.*, 131 B.R. 380, 398 (Bankr.W.D.Tenn.1991); *see also* 3 LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 506.05 at 506–46 through 506–48 (15th ed. 1994). Upon the effective date of the plan, First American is entitled to receive the market rate of interest. *Memphis Bank & Trust Company v. Whitman*, 692 F.2d 427 (6th Cir.1982).

■ In determining what the appropriate rate of interest is, the Court must consider the requirements for plan confirmation under the Bankruptcy Code. In order for a Chapter 11 plan to be confirmed over the objection of a dissenting secured creditor, the plan must meet the "fair and equitable" test set forth in 11 U.S.C. § 1129(b)(2)(A). With respect to a class of secured claims, a debtor must show that the secured creditor will retain its lien and receive deferred cash payments totalling at least the allowed amount of the claimant's secured claim. *In re Bird-*

*neck Apartment Associates, II, L.P.*, 156 B.R. 499, 507 (Bankr.E.D.Va.1993); *In re Bryson Properties, XVIII*, 961 F.2d 496, 500 (4th Cir.1992). In other words, a creditor who is to receive deferred payments is entitled to receive interest in an amount that renders the deferred payments equal to the present value of the claim (the value as of the effective date of the plan). *In re Architectural Design, Inc.*, 59 B.R. 1019, 1020–21 (Bankr.W.D.Va.1986).

■ The "present value" concept can be expressed by the following proposition: a dollar in hand today is worth exactly the same as (1) a dollar to be received a day, a month or a year hence *plus (2) the rate of interest which the dollar would earn if invested at an appropriate interest rate.* 5 COLLIER ON BANKRUPTCY ¶ 1129.03[4][f][i] (15th ed. 1993) (emphasis added). Therefore, in order for the present value of a claim to be calculated, the Court must determine the proper interest rate which will serve as the measuring standard by which the Court can evaluate whether deferred payments under the terms of the plan have a value as of the effective date of the plan equal to the allowed claim. *Id.*

■ The Sixth Circuit follows the "coerced loan" approach in determining the proper interest rate for plan confirmation. *Memphis Bank & Trust Company* at 431. Under this theory, a new loan is made to the debtor by the creditor in the amount of the current value of the collateral. The appropriate interest rate used to calculate the present value of the claim of a secured creditor under the coerced loan approach is the current market rate of interest for similar loans in the region. *Id.; see also United States v. Arnold*, 878 F.2d 925 (6th Cir.1989); *In re Apple Tree Partners, L.P.*, 131 B.R. 380 (Bankr.W.D.Tenn.1991). This rate is influenced by rates of other lenders in the same market in the region. In *In re Gene Dunavant & Son Dairy*, 75 B.R. 328 (M.D.Tenn.1987), Judge Morton noted the following:

[P]resent value assumes the use of market rates of interest (as distinguished from the rate specified in the contract) for loans of

886

similar duration, with similar security, and with similar risks.

75 B.R. at 335, citing 4 COLLIER ON BANKRUPTCY ¶ 1129.03[i] (15th Ed.1985) and *Memphis Bank and Trust Company.*

■ First American argues that there is no market rate of interest for this "coerced" loan, because, as First American's expert witness testified, there is no market for a loan such as this one to this particular Debtor. This argument is without merit. As was stated in *Birdneck:*

> If there were an actual market the debtor could access to obtain such a loan, § 1129(b)(2) would not be needed. To deny confirmation because there is no actual market for a similar loan would in effect be giving the market permission to repeal § 1129(b)(2). The court cannot conclude that Congress intended for 11 U.S.C. § 1129(b)(2) to be interpreted such that it never applies. *In re Eastland Partners Ltd. Partnership,* 149 B.R. 105, 106 (Bankr.E.D.Mich.1992). Therefore, the court's inquiry must focus on a hypothetical market rate of interest for a loan of similar terms.

156 B.R. at 508–09.

In proposing a hypothetical market rate of interest in the *Birdneck* case, the creditor's expert reviewed the debtor's plan, disclosure statement, the debtor's operating statement, rent rolls, and its appraisals. He then used loan-to-value ratio and risk of default to create a hypothetical market rate of interest. Therefore, this Court should look at similar factors in determining a hypothetical market rate of interest in the present case.

First American also maintains that *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), *Farrey v. Sanderfoot,* 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991), and *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991) support the proposition that Debtor is required to pay First American the contractual rate of interest. The Court does not agree with this argument. These Supreme Court cases clearly do not apply to the case at bar. In the present case, Debtor is proposing to pay the full amount of its secured debt, and is simply asking the court to adjust the amount of interest that will be paid upon the effective date of the plan.

■ The Court agrees with Debtor's counsel that the Court is the proper party to determine what the market rate of interest would be for a loan of this type. In determining an appropriate market rate of interest, the Court reviewed Debtor's plan, disclosure statement, the Debtor's income statement, weekly cash collateral reports, the Debtor's financial performance post-petition, the Debtor's appraisal, as well as all of the other evidence presented to the Court. Evidence was presented to this Court in Exhibit 11, that an appropriate market rate would be the "prime" rate plus a risk factor. The Court finds, based upon all of the evidence in the record, that the appropriate risk factor to be used in this case is three percent (3%). Therefore, it is this Court's determination that, upon the effective date of the plan, First American's claim shall be paid at an interest rate of "prime" plus three percent (3%). This rate represents a market rate of interest for similar loans, with similar durations, collateral, and risks (notwithstanding the fact that the Debtor is reorganizing under Chapter 11 of the Bankruptcy Code). The prime rate to be used shall be the prime rate as of the effective date of the plan. The prime rate referred to herein is the rate published by the Wall Street Journal. Issues regarding the terms of repayment of the First American debt, as well as all other remaining issues, will be addressed at the confirmation hearing.