**In re Chrysan L. EDIGHOFFER, Debtor.**

**No. 06–41871.**

United States Bankruptcy Court, N.D. Ohio.

Aug. 6, 2007.

Brett Billec, Cleveland, OH, for Debtor.

Dean Wyman, Linda M. Battisti, Office of the US Trustee, Cleveland, OH, for U.S. Trustee.

## MEMORANDUM OPINION

KAY WOODS, Bankruptcy Judge.

Debtor Chrysan L. Edighoffer ("Debtor") filed a voluntary petition pursuant to chapter 7 of the Bankruptcy Code on November 9, 2006 ("Petition Date"). Along with the petition, Debtor filed various schedules, including Schedules I and J. Debtor also filed Form 22A Chapter 7 Statement of Current Monthly Income and Means–Test Calculation.

Before the Court is Motion of United States Trustee to Dismiss Case Pursuant to 11 U.S.C. Section 707(b)(2) and (b)(3) ("Motion to Dismiss") filed by Saul Eisen, United States Trustee for Region 9 ("UST") on January 26, 2007 (Doc. # 17). On February 9, 2007, Debtor filed Debtor's Response to United States Trustee's Motion to Dismiss Case Pursuant to 11 U.S.C. Section707(b)(2) [sic] and (b)(3) ("Response") (Doc. # 22). The February 22, 2007, hearing scheduled on the Motion to Dismiss was continued until March 15, 2007 ("Hearing") upon motion of Debtor. In the meantime, on February 20, 2007, Debtor filed Amended Schedule I and Amended Form 22A (Doc. # 21).

At the Hearing, counsel for UST limited her argument to the second part of the Motion to Dismiss premised upon § 707(b)(3), in light of the Court's Memo-randum Opinion in *In re Zak,* 361 B.R. 481 (Bankr.N.D.Ohio 2007).

Because the parties raised certain issues for the first time at the Hearing, the Court ordered the parties to submit supplemental simultaneous briefs. Brief of United States Trustee in Support of Motion to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(3) ("UST's Post-hearing Brief") (Doc. # 32) was filed on March 27, 2007, and Debtor's Brief in Response to United States Trustee's Motion to Dismiss Case (Doc. # 33) was filed on March 28, 2007.

After reviewing the briefs, the Court scheduled and conducted an evidentiary hearing on July 3, 2007 ("Evidentiary Hearing"). Linda Battisti, Esq. appeared on behalf of the UST and Brett Billec, Esq. appeared on behalf of Debtor. At the Evidentiary Hearing, the Court received testimony from Christopher Sonson, bankruptcy analyst in the office of the UST, and Debtor. The Court also received and admitted the following exhibits: (i) Government Ex. 1—Debtor's 2006 tax return; (ii) Government Ex. 2—Debtor's 2005 tax return; and (iii) Debtor's Ex. 1—Debtor's June 29, 2007 pay stub (showing Debtor's commutative pay for the first six months of 2007). At the conclusion of the Evidentiary Hearing, the Court took the matter under advisement. The Court, having considered all pleadings, arguments, testimony, exhibits, and having reviewed the entire record in this case, finds that the weight of the evidence supports the Motion to Dismiss Debtor's chapter 7 case.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue in this Court is proper pursuant to 28 U.S.C. §§ 1391(b), 1408, and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J) and (O). The following constitutes the Court's findings of fact

and conclusions of law pursuant to FED. R. BANKR. P. 7052.

## I. LAW

Section 707 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") provides for dismissal of a chapter 7 case when there is a presumption of abuse. A presumption of abuse may arise based upon a detailed calculation of the debtor's income and expenses over the course of the six-month period preceding the petition date—commonly referred to as the "means test." *See* 11 U.S.C. § 707(b)(2).

In the event the means test does not give rise to a presumption of abuse, or the presumption is successfully rebutted by the debtor, § 707(b)(3) provides an alternative rationale for dismissing the debtor's chapter 7 petition:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider-
>
> (A) whether the debtor filed the petition in bad faith; or
>
> (B) the totality of the circumstances ... of the debtor's financial situation demonstrates abuse.

11 U.S.C. § 707 (West 2006).

■ "[T]he two grounds for dismissal under § 707(b)(3) are best understood as a codification of pre-BAPCPA case law[,]" and as such, pre-BAPCPA case law applying these concepts is still helpful in determining whether there is abuse pursuant to § 707(b)(3).[1] *In re Wright*, 364 B.R. 640,

643 (Bankr.N.D.Ohio 2007) (internal citations omitted). However, Congress has changed the standard for dismissal under BAPCPA from "substantial abuse" to "abuse." *In re Fisher*, 2007 WL 2079781 at *2 (Bankr.N.D.Ohio 2007); *In re Wright*, 364 B.R. at 642.

The Sixth Circuit, interpreting pre-BAPCPA § 707(b), held that Congress intended to deny chapter 7 relief to the "dishonest or non-needy debtor." *In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989). The *Krohn* Court reasoned that a debtor's ability to repay his debts out of future earnings may be sufficient to warrant dismissal based upon need, particularly where a debtor's disposable income permits liquidation of his consumer debts with relative ease. *Id.; See also Mestemaker*, 359 B.R. 849, 856 (Bankr.N.D.Ohio 2007) ("Courts generally evaluate as a component of a debtor's ability to pay whether there would be sufficient income in excess of reasonably necessary expenses to fund a Chapter 13 plan." (internal citations omitted)). Other factors to be considered in determining whether a debtor is "needy" include:

> ... whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*In re Krohn*, 886 F.2d at 126–127.

■ Courts and commentators alike have recognized that the § 707(b)(3) "total-

---

1. As a consequence, a number of bankruptcy courts in the Northern District of Ohio have applied pre-BAPCPA case law in considering whether abuse exists under § 707(b)(3). *In re Wright*, 364 B.R. 640 (Bankr.N.D.Ohio 2007); *In re Mestemaker*, 359 B.R. 849 (Bankr. N.D.Ohio 2007); *In re Simmons*, 357 B.R. 480 (Bankr.N.D.Ohio 2006).

ity of the circumstances" analysis requires a bankruptcy court to undertake an analysis of a debtor's "actual debt paying ability" independent of the means test analysis under § 707(b)(2). *In re Mestemaker*, 359 B.R. at 853–56; *see also* Hon. Eugene R. Wedoff, *Judicial Discretion to Find Abuse under 707(b)(3)*, 71 Mo. L.Rev. 1035, 1037 (2006) ("[I]f a section 707(b) motion properly raises the question, a bankruptcy judge has a duty to consider the actual financial situation of a debtor who is not subject to a means test presumption; that the judge should find abuse where the debtor can repay a sufficient amount of unsecured debt; and that the means test serves to guide, rather than foreclose, such determinations of abuse."). The totality of the circumstances test also allows the Court to consider both prepetition and postpetition circumstances. *In re Fisher*, 2007 WL 2079781 at *2 (*citing Trustee v. Cortez (In re Cortez)*, 457 F.3d 448, 455 (5th Cir.2006)); *In re Mestemaker*, 359 B.R. at 855–56; *In re Hartwick*, 359 B.R. 16, 21 (Bankr.D.N.H.2007).

 Congress also eliminated the pre-BAPCPA express statutory presumption in favor of granting debtor the requested relief. Neither party enjoys a presumption concerning abuse in a post-BAPCPA § 707(b) analysis. *See In re Nockerts*, 357 B.R. 497, 505 (Bankr. E.D.Wis.2006) (The UST does not enjoy the benefit of a presumption of abuse when pursuing a § 707(b)(3) motion.); *In re Wright*, 364 B.R. at 642 (Congress eliminated in BAPCPA the presumption in favor of the debtor, which existed in former § 707(b).) UST carries the burden of proof to demonstrate that dismissal is appropriate under § 707(b)(3). *In re Graham*, 363 B.R. 844, 853 (Bankr.S.D.Ohio 2007); *In re Wright*, 364 B.R. at 642.

## II. § 707(b)(3) ANALYSIS

The Court first finds that UST met the initial threshold under § 707(b)(1) by establishing that Debtor's debts are primarily consumer debts. Debtor testified that 80.25% or $28,446.68 of Debtor's unsecured debt of $35,446.68 is consumer debt.[2] Debtor specifically testified that only $7,000.00 of the unsecured debt—which was used to purchase a new roof for rental property—was business debt.

It is also beyond dispute that Debtor's annual income exceeds the $46,367.00 median annual income ("Median Income") for a family of two in Ohio[3] based on Census Bureau Median Income by Family Size (Cases filed between October 1, 2006, and January 31, 2007, Inclusive). Debtor has been employed as a nurse at St. Elizabeth Hospital for 23 years, where she earns an hourly wage of $27.04. Debtor is contractually guaranteed a forty-hour work week. Thus, Debtor is guaranteed to earn at least $56,243.20 per year[4]; however because of overtime pay, Debtor earned $69,801.00 in 2005 and $64,023.00 in 2006. Due to overtime pay earned in the first six months of 2007, Debtor is on track to earn $60,320.30 this year, but will earn at least $58,281.75. Debtor testified that she is currently healthy and does not anticipate any event that will limit her earnings.

UST makes three primary arguments in urging dismissal pursuant to the totality of

---

2. Debtor's debt is below the debt ceiling for filing a chapter 13 case. *See* 11 U.S.C. § 109(e).

3. Debtor testified that she has an 12 year old son who lives with her. (Evidentiary Hearing at 10:46 a.m.)

4. Consequently, Debtor is guaranteed to earn at least $11,914.75 above the Median Income in subsequent years.

Debtor's circumstances, as follows: (i) Debtor's actual rent/mortgage expense ("Mortgage Expense") is estimated to be one-third less than the amount set forth on Schedule J because Debtor is surrendering her residence; (ii) Debtor's federal income taxes are being over-withheld because Debtor received a tax refund of $5,946.00 in 2006 ("2006 Tax Refund"); and (iii) Debtor is not entitled to take a deduction for contributions to her employer's 26 U.S.C. § 403(b) retirement plan ("403(b) Contribution"). As a consequence, UST argues that Debtor has sufficient disposable income to pay a portion of her unsecured debt. Debtor opposes each of these arguments, arguing that she does not have the ability to repay her unsecured debts because, as shown on Schedule J, she has a negative disposable income of $120.80.

As set forth below, the Court will consider each of the UST's arguments in support of dismissal, in turn.

### A. Mortgage Expense

■ UST argues that, since Debtor is going to surrender her home, she will no longer incur the following expenses: (i) $1,113.00 mortgage payment; (ii) $380.00 for electricity and heating fuel; (iii) $140.00 for water and sewer; (iv) $30.00 for home maintenance; (v) $45.00 for home owner's insurance; and (vi) $152.00 for property taxes. (Motion to Dismiss at 7.) In UST's Post–Hearing Brief, UST asserts that the Court should decrease Debtor's monthly expenses by $620.00 (one-third of the housing and utility costs) because Debtor is surrendering her residence. Debtor correctly notes that, pursuant to this Court's decision in *Zak*, Debtor can deduct the mortgage and household expenses under the means test even though she is going to surrender the residence.

This argument, however, relates only to dismissal pursuant to § 707(b)(2) and is not applicable when considering the totality of the circumstances under § 707(b)(3). This Court specifically stated, "UST may argue Debtors' actual mortgage and vehicle expenses in urging abuse under § 707(b)(3)." *In re Zak*, 361 B.R. at 489 n. 4. The Court noted that an evidentiary hearing would likely be necessary to determine whether dismissal was appropriate pursuant to § 707(b)(3).[5]

Unlike the means test analysis, in analyzing the totality of the circumstances, the Court may subjectively review Debtor's income and expenses based upon prepetition events and postpetition forecasts. *In re Haar*, 360 B.R. 759, 767 (Bankr. N.D.Ohio 2007) ("The 'means test,'—although enacted as a device to ensure that debtors with an ability to pay their debts, would actually do so—is a strict mechanical test. Its function, in essence, is to limit the court's discretion." (internal citations omitted)); *In re Gress*, 344 B.R. 919, 922 (Bankr.W.D.Mo.2006) ("In enacting the means test, Congress intended to take away discretion from the courts as to higher income debtors, who were seen as abusers of the system.").

This difference is explained by Judge Wedoff in *Means Testing in the New 707(b)*:

> [F]or purposes of the means test, debt secured even by such items as luxury vehicles, pleasure boats, and vacation homes would be deductible. Moreover, under a plain language analysis, the balance of a balloon mortgage that became contractually due during the five years after the bankruptcy filing—and perhaps even the total balance due on a defaulted mortgage that had been con-

---

**5.** The debtor in *Zak* converted his case to a chapter 13 proceeding, thus the Court did not

determine how surrendered property may affect a totality of the circumstances analysis.

tractually accelerated—would be entirely deductible. However, if deductions of this sort allowed a wealthy debtor to avoid the presumption of abuse under the means test, an abuse might still be found in consideration of the "totality of the circumstances ... of the debtor's financial situation" pursuant to 707(b)(3).

Honorable Eugene R. Wedoff, U.S. Bankruptcy Judge, Northern District of Illinois, *Means Testing in the New 707(b)*, 79 Am. Bankr.L.J. 231, 273 (Spring 2005).

A number of other bankruptcy courts, in ruling on motions to dismiss under § 707(b)(2), have observed that a debtor's decision to surrender collateral securing a debt may be a factor when analyzing abuse under § 707(b)(3). *In re Sorrell*, 359 B.R. 167, 186–87 (Bankr.S.D.Ohio 2007) ("The *Statement of Intention* and other filings beyond a debtor's schedules would remain relevant for purposes of § 707(b)(3) analysis."); *In re Haar*, 360 B.R. at 768 ("It also cannot be ignored that passing the 'means test' does entirely insulate a debtor from the effects of retaining or surrendering property and a later finding of abuse. Section 707(b)(3) ... provides an independent basis for a court to dismiss a case for abuse."); *In re Mundy*, 363 B.R. 407, 414 (Bankr.M.D.Pa.2007) ("[D]ebtor's decision to surrender collateral securing a debt, while it may be a factor when analyzing abuse under the totality of the circumstances test under § 707(b)(3), may not be considered under the plain language of § 707(b)(2)(A)(iii)(I).").

Only one bankruptcy court has specifically addressed the effect surrender of real estate has on a debtor's actual debt paying ability. In *Wright, supra*, the debtor surrendered his home and automobile. The UST in *Wright* argued that the debtor had the ability to fund a chapter 13 plan because he would no longer be required to make mortgage payments and had the opportunity to reduce his automobile payment to a more affordable amount. *In re Wright*, 364 B.R. at 643. Subsequently, the debtor amended his income and expenses figures, providing downward adjustments for both. Judge Richard L. Speer concluded that, although the debtor was no longer required to service his obligations on his residence and automobile, he was "still entitled to allocate a reasonable amount of money towards these categories of expenses." *Id.* Judge Speer reasoned that there was nothing out of the ordinary about the amount allocated for the debtor's revised rent, and, although not dispositive of the issue, the amount allocated was consistent with the threshold deemed appropriate by Congress in the means test.[6] *Id.* at 643–44.

Unlike the debtor in *Wright*, Debtor has not revised her expenses or amended Schedule J (although she amended Schedule I with a downward adjustment); she still lists the mortgage payment as her Mortgage Expense ever though she has not made that payment for some time.[7] Moreover, Debtor's Mortgage Expense is not consistent with allowable housing expenses in the IRS local standards. Debtor seeks to use the $1,113.00 monthly mort-

---

**6.** Along with median income standards, one can find the local housing, utility and transportation standards on the UST's website (www.usdoj.gov/ust).

**7.** Debtor's Chapter 7 Individual Statement of Intention states that Debtor intends to surrender her residence. On November 21, 2006, Mortgage Electronic Systems, Inc.

("MERS")—note holder to the residence—filed a motion for relief from stay. Subsequently, on January 4, 2007, the Court issued an order granting relief from stay on the residence Hence, MERS can no longer accept mortgage payments and the residence is likely moving toward foreclosure sale.

gage payment for her surrendered property as a reasonable Mortgage Expense although this amount is $582.00 more than the standard of $531.00 for a household of two in Trumbull County, Ohio established by the IRS. This Court—in weighing the totality of the circumstances—cannot in good conscience allow Debtor to use the monthly mortgage payment for surrendered property as a legitimate Mortgage Expense when Debtor is neither making such mortgage payment nor is the amount consistent with IRS standards. This leaves the Court to determine reasonable housing expenses for a family of two in Trumbull County. Neither UST nor Debtor provided evidence concerning Debtor's actual housing and utility costs (other than Schedule J) or estimated likely housing and utility expenses that Debtor will incur in the future. Debtor merely speculates that her Mortgage Expense and utilities will remain the same as set forth in Schedule J because she intends to purchase another house. Despite Debtor's current intent to purchase another residence, however, there is no basis for this Court to conclude that Debtor will be able to obtain financing to purchase another residence or that replacement housing will carry an identical or similar monthly Mortgage Expense. UST's argument that Debtor will be able to reduce her Mortgage Expense and utility expenses by one-third is equally unsupported by any evidence. Neither of these arguments provide the Court with any guidance.

Debtor's Mortgage Expense exceeds the threshold deemed appropriate in the means test. The IRS calculates that reasonable mortgage/rent for a family of two in Trumbull County is $531.00—which is less than half of the Mortgage Expense of $1,113.00 on Debtor's Schedule J. As a result, Debtor has or should have a Mortgage Expense significantly less than the amount claimed on Schedule J. Following the approach articulated in *Wright*, this Court finds that Debtor can allocate a reasonable amount toward housing expenses and still have disposable income to pay her unsecured creditors.

In addition to the decrease in Mortgage Expense, UST argues that Debtor's scheduled utility expenses of $590.00 can be reduced by one-third, but provides no support for this anticipated reduction. Debtor argues that, regardless of where she lives, she will incur expenses for utilities. There is no evidence concerning whether Debtor's utility expenses, after the surrender of her residence, will be more, less or about the same as her current utility expenses. The Court will look again to IRS standards to determine appropriate estimated expenses for utilities. According to the IRS local standards, a household of two in Trumbull County should expend $337.00 per month for utilities. Debtor's monthly expenses for utilities on Schedule J exceed the IRS standard by $253.00 ($590.00—$337.00). It is likely that Debtor will have reduced utility expenses (albeit in an unknown amount at this time) that can be used to pay unsecured creditors.

■ UST also argues that Debtor has the ability to pay her unsecured creditors because after surrendering her residence, Debtor will not be required to pay $152.00 per month for property taxes and $45.00 per month for homeowners insurance. Because it is not clear whether Debtor will purchase or rent after surrendering her residence, the Court will not reduce Debtor's expenses for these items. If Debtor purchases another home, she will have some expenses for property taxes and homeowners insurance. Conversely, if Debtor chooses to rent, Debtor may have an expense for renter's insurance in lieu of homeowners insurance.

## B. Tax Refund and Over-withholding

■ UST argues that Debtor's income is unrealistically understated because she causes federal income taxes to be over-withheld from her paycheck. UST notes that Debtor's federal income taxes were over-withheld by $495.50 per month in 2006 (based upon the 2006 Tax Refund of $5,946.00). This amount was adjusted at the Evidentiary Hearing to be $421.50 per month. Debtor counters that (i) the 2006 Tax Refund was the result of a one-time capital loss on rental real property that she has surrendered, and (ii) any tax refund in the future will be less than the 2006 Tax Refund because her income has decreased over the past three years. UST contends that the capital loss accounts for only a small portion of the Tax Refund and that Debtor will receive substantial federal tax refunds in the future regardless of her income because she claims the "single" allowance instead of "head of household" allowance for withholding purposes.

Although over-withholding of taxes has been the subject of a number of memorandum opinions issued in chapter 13 proceedings, only one bankruptcy court has addressed the effect of over-withholding taxes in the context of chapter 7. In *In re Hutton,* 158 B.R. 648 (Bankr.E.D.Ky. 1993), the court addressed a motion to dismiss by UST for substantial abuse pursuant to § 707(b)(3). The *Hutton* court increased the debtors' monthly net pay by $200.00 based upon a tax refund of $2,300.00. *Id.* at 649.

Similarly, in determining "projected disposable income" in the chapter 13 context, the bankruptcy court in *In re Riggs,* 359 B.R. 649, (Bankr.E.D.Ky.2007), ordered a reduction in the debtors' Schedule I tax expense to reflect their actual tax liability, rather than the amount being withheld for taxes. *Id.* at 653. The bankruptcy court reasoned that tax refunds were disposable income, and, as a consequence, the debtors' actual tax expense should be reflected on Schedule I. *Id.; see also In re Rhein,* 73 B.R. 285, 288 (Bankr.E.D.Mich. 1987)("Since [debtor's] budget shows that she put aside about $147.00 per month into a virtual savings account through the vehicle of over-withholding of income taxes from her wages, which savings has not been pledged to the use of the plan, the credit union's objection to confirmation of the plan will be sustained.") This Court agrees with the reasoning of these cases.

Sonson, the UST bankruptcy analyst, testified that elimination of the rental property deduction would have increased Debtor's income for 2006 by $3,486.00, which would have caused the Tax Refund to be reduced by $887.00, *i.e.,* $74.00 per month. Accordingly, UST concludes that Debtor's taxes are over-withheld by $421.50 per month.

Debtor contends that, because her income has decreased as a result of the elimination of overtime, her future tax refunds will be less than the 2006 Tax Refund. Debtor also argues that any future tax refund will be less because she no longer owns rental property. As a consequence, Debtor concludes that UST's projected over-withholding figure of $421.50 is inaccurate.

UST has already taken the surrender of the rental property into account in calculating Debtor's projected tax liability. Debtor's 2006 tax return reflects that she took the standard deduction rather than itemizing deductions. Thus, because Debtor does not itemize deductions surrender of her residence and the rental property will not have a dramatic effect on future tax refunds. The Court acknowledges that, in general, a decrease in income will result in a reduction in the amount of taxes withheld and a proportionate decrease in the amount of a tax refund. Debtor has provided no evidence concern-

ing the amount of decrease she anticipates in her future tax refunds.

Even with the total elimination of all overtime opportunities, Debtor will continue to have a substantial tax refund as long as she claims the same allowance for tax withholding purposes. Sonson testified that he believes Debtor claims one dependant for withholding purposes, but Debtor could claim the head of household allowance.[8] Currently, Debtor chooses to have more taxes withheld than necessary, which results in her receipt of a federal income tax refund each year. Debtor cannot be allowed to continue to over-withhold to the detriment of her unsecured creditors. If Debtor claimed a more accurate allowance, her withholding would decrease, and her income would commensurately increase, thus enabling her to fund a chapter 13 plan for the benefit of her unsecured creditors. The exact amount available to Debtor to fund a chapter 13 plan cannot be determined until Debtor revises her income and expense calculations. Nevertheless, it is clear that, even if Debtor earns income only based on her guaranteed forty-hour work week, realistic withholding will result in some additional income.

Moreover, Debtor testified that she historically received federal tax refunds ranging from $3,000.00 to $5,000.00. The low end of this range demonstrates that Debtor's federal income taxes have been consistently over-withheld by at least $250.00 per month ($3,000 ÷ 12).

If Debtor's income reflected tax withholding based upon her actual tax liability, her net pay would increase in the range of $250.00 to $397.13 per month (based on Debtor's projected 2007 income). Utilizing Schedule J negative income of $121.80[9], Debtor would have disposable monthly income, after expenses, in the range of $128.20 ($250.00—$121.80) to $275.33 ($397.13—$121.80), which could be used to fund a chapter 13 plan.

## C. 403(b) Contributions

■ UST argues that the 403(b) Contributions are not allowable in considering § 707(b) motions. Debtor correctly notes that, if she converts to chapter 13, her 403(b) Contributions would not be included in the computation of monthly disposable income pursuant to 11 U.S.C. § 541(b)(7).[10] However, Debtor incorrectly argues that a "logical extension" of *In re Thompson*, 350 B.R. 770, (Bankr.N.D.Ohio 2006), requires the Court to disregard the 403(b) Contributions when determining the totality of the circumstances.[11] The *Thompson* argument is flawed for two reasons. First, *Thompson* was reversed on appeal. *Eisen*

---

8. Upon review of Debtor's pay stub (UST Ex. 1.), it appears Debtor is actually claiming an allowance for zero dependents. Since the Court finds that, pursuant to the totality of the circumstances, Debtor has the ability to repay a portion of her unsecured debt, this error is not fatal for either party.

9. As set forth above, Debtor's Mortgage Expense should be reduced, thus increasing the Schedule J amount of disposable income.

10. Section 541(b)(7) reads, in pertinent part:
 (b) Property of the estate does not include:
 (7) any amount–
 (A) withheld by an employer from the wages of employees for payment as contributions–

(i) to–

* * * * * *

(III) a tax-deferred annuity under section 403(b) of the Internal Revenue Code of 1986;
except that *such amount under this subparagraph shall not constitute disposable income as defined in section 1325(b)(2)*[.]
11 U.S.C. § 541 (West 2006) (emphasis added).

11. In the *Thompson* case, the bankruptcy court held that, although repayment of a 401(k) loan could not be used as an allowable expense for purposes of the means test to determine the presumption of abuse, it could

v. *Thompson,* 370 B.R. 762 (N.D.Ohio 2007). Second, the "logical extension" of *Thompson* would be in direct contravention of the Sixth Circuit's holding in *Behlke v. Eisen (In re Behlke),* 358 F.3d 429 (6th Cir.2004).

*Behlke* held that voluntary contributions to retirement plans can be considered disposable income in considering whether dismissal is warranted for abuse under § 707(b). *In re Behlke,* 358 F.3d at 435–36 (citing *Anes v. Dehart (In re Anes),* 195 F.3d 177, 180–81 (3rd Cir.1999); *In re Austin,* 299 B.R. 482, 486–87 (Bankr. E.D.Tenn.2003); *In re Keating,* 298 B.R. 104, 110–11 (Bankr.E.D.Mich.2003); *In re Heffernan,* 242 B.R. 812, 818 (Bankr.D.Conn.1999))(*cited in In re Glenn,* 345 B.R. 831, 836 (Bankr.N.D.Ohio 2006); *In re Peoples,* 345 B.R. 840, 846 (Bankr. N.D.Ohio 2006); *In re Mooney,* 313 B.R. 709, 713 (Bankr.N.D.Ohio 2004)). The Sixth Circuit in *Behlke* rationalized, "it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend." *In re Behlke,* 358 F.3d at 435 (quoting *In re Jones,* 138 B.R. 536, 539 (Bankr.S.D.Ohio 1991)).

Although Debtor correctly notes that she would be permitted to continue to contribute to her 403(b) retirement plan in chapter 13—as the 403(b) Contribution is not "disposable income" under § 1325(b)(2)—this Court is constrained by *Behlke* and must find that the voluntary 403(b) Contribution of $292.00 [12] must be considered in determining whether Debtor can repay her unsecured creditors.

As a result, the Court finds that, in analyzing the totality of the circumstances, pursuant to § 707(b)(3), Debtor's 403(b) Contribution of $292.00 per month must be included as disposable income.

### III. CONCLUSION

■ The Court finds that, based on the totality of the circumstances, as required by § 707(b)(3), Debtor has the ability to repay a substantial portion of her unsecured debt. Accordingly, it would be an abuse to permit Debtor to continue to proceed under chapter 7. The Court is not troubled that it does not know with certainty what amount Debtor has in disposable income because the Court is left with the firm and distinct feeling that Debtor has, indeed, some disposable income based on the following: (i) Schedule J expenses can be adjusted downward to reflect actual expenses as a result of surrender of the residence; and (ii) over-withholding of federal taxes results in additional monthly income to Debtor.

The Motion to Dismiss is conditionally granted, as follows: Debtor has ten days from the date of this Memorandum Opinion and Order to convert her case to a proceeding under chapter 13 of the Bankruptcy Code; if the case is not converted in that ten-day period, Debtor's case will be dismissed.

An appropriate order will follow.

### ORDER

### CONDITIONALLY GRANTING MOTION TO DISMISS

For the reasons set forth in this Court's Memorandum Opinion entered on this

---

be considered a special circumstance to rebut the presumption of abuse.

**12.** Both parties state that Debtor contributes $292.00 a month to her voluntary retirement fund, however this amount appears to be un-

derstated. Based upon the contribution of $142.35 for a two week pay period (multiplied by 26 pay periods and divided by 12 months), the monthly 403(b) contribution appears to be $308.46.

date, the Court finds that, based on the totality of the circumstances, as required by § 707(b)(3), Debtor has the ability to repay a substantial portion of her unsecured debt. Accordingly, it would be an abuse to permit Debtor to continue to proceed under chapter 7. The Motion of United States Trustee to Dismiss Case Pursuant to 11 U.S.C. Section 707(b)(2) and (b)(3)filed by Saul Eisen, United States Trustee for Region on January 26, 2007 is conditionally granted, as follows: Debtor has ten days from the date of this Memorandum Opinion and Order to convert her case to a proceeding under chapter 13 of the Bankruptcy Code; if the case is not converted in that ten-day period, Debtor's case will be dismissed.

**IT IS SO ORDERED.**